# THE WILSON AMUSEMENT COMPANY, a Body Corporate,

## vs.

## BIRD SPANGLER.

*Tort of Servant—Liability of Master—Assault and Battery— Ejection from Theatre—Evidecne.*

The question whether the wrongful act of a servant was done in the furtherance of his master's business, within the scope of the servant's employment, is generally one of fact to be decided by the jury.                                            p. 103

In an action against the proprietor of a theatre for an assault committed by his employee in ejecting plaintiff on the ground of intoxication, *held* that there was evidence that the assault was committed by the employee while acting in the course of his master's service and within the scope of his employment, such employee testifying that he had instructions to eject "undesirables."                                    pp. 104, 105

An assault on plaintiff, committed upon the street by a theatre employee, as plaintiff was leaving the theatre, *held* to be but a continuation of previous assaults on him by the employee within the theatre, while seeking to eject him, and hence to have been committed in the performance of his duties under his employment.                                        p. 104

In an action for assault by a theatre employee, committed while ejecting plaintiff on the ground of intoxication, *held* that it was proper to exclude questions asked of a witness who had testified that plaintiff was sober at the time, as to whether he had seen him intoxicated at other times.            p. 105

Plaintiff being charged with intoxication at the time of the alleged assault, and he being described as having, after the assault, a broken nose, black eyes, and a bloody face, it was proper to show, by a witness who had seen plaintiff a short time before, his condition as to sobriety, as well as physically, at that time.                                         p 105

Error in refusing to take the case from the jury at the close of plaintiff's evidence is waived by defendant if he proceeds to offer evidence in defense.                    p. 106

In an action for assault, defendant's servant, alleged to have committed the assault, having said that plaintiff had struck him before he struck plaintiff, and plaintiff having testified that he had done nothing to justify the assault, it was proper to allow the servant to be asked if he was not convicted of assault on that occasion.                    p. 106

*Decided March 16th, 1923.*

Appeal from the Baltimore City Court (Dawkins, J.).

Action by Bird Spangler against the Wilson Amusement Company. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before Boyd, C. J., Thomas, Pattison, Urner, Stockbridge, and Offutt, JJ.

*Joseph Bernstein,* with whom was *Myer Rosenbush* on the brief, for the appellant.

*Lawrence S. Kaufman,* with whom were *Kaufman & Kaufman* on the brief, for the appellee.

Pattison, J., delivered the opinion of the Court.

The appeal in this case is from a judgment recovered by the appellee, Bird Spangler, against the appellant, The Wilson Amusement Company, owner and operator of the Rivoli moving picture theatre, in the City of Baltimore.

The declaration in the case consists of two counts. The first charges the defendant, its servants and employees, acting within the scope of their employment, with assaulting the plaintiff on the 24th day of September, 1921; while the

charge in the second count is for assaulting. *and beating* the plaintiff.

In the course of the trial five exceptions were taken to the rulings of the court upon the evidence, and two upon the prayers.

The plaintiff offered two prayers, both of which were granted. The only prayer offered by the defendant was one asking the court to take the case from the jury, because of a want of evidence legally sufficient to entitle the plaintiff to recover. This prayer was rejected.

The defendant filed special exceptions to the plaintiff's prayers, which were overruled.

These rulings of the court, with those granting the plaintiff's prayers, gave rise to the seventh bill of exceptions.

The chief question, and practically the only one in the case, for our consideration, is whether the evidence adduced was legally sufficient to go to the jury, tending to show that, at the time of the assault and battery, the agent or servant of the defendant, charged with assaulting and beating the plaintiff, was acting in the course of his master's service and within the scope of his employment. This question is presented by the special exceptions to the plaintiff's prayer, and the prayer offered by the defendant asking that the case be taken from the consideration of the jury. It will, therefore, be necessary for us to go quite fully into the facts of the case.

The plaintiff, aged fifty-seven years, testified that on the 24th day of September, 1921, between the hours of five and seven o'clock in the afternoon, he went to the Rivoli moving picture theatre, situated on the southwest corner of Gay and Fayette Streets; that before entering the theatre he purchased a ticket at the entrance of the theatre from an employee of the company, which he presented to the door keeper, one Henry Slitzer, likewise an employee of the company, and after passing through the door he proceeded up-

stairs and, when he was in the act of taking his seat, he was "grabbed" by Slitzer, who shoved him downstairs and, while doing so, struck him several times in the side; that he remonstrated with Slitzer, asking him "what was the matter?" but no reply was made to his inquiry more than to say, "come on," and "kept on shoving him and hitting him in the side." When they were on the outside near the place where the tickets were sold, Slitzer went to the window, got some money, and handed it to him. When he did so, he applied an opprobrious epithet and said "get out of this." Just then he heard his name called, and when he turned to look to see who it was calling him, he was struck and knocked in the gutter and the blood flowed from his mouth, nose and ears, and he could not see at all; and when he was asked what he had done to justify the assault, he answered, "Not anything; I was the most surprised person in the world." He was then asked: "Were you drunk at the time?" and he said, "No, sir; I had just come from my place of business." "Q. Had you taken any drink at all? A. Not at all."

Ernest F. Ayres, who was, on the 24th day of September, 1921, employed at Revell's hat store, on the corner of Baltimore and Gay Streets, testified that Spangler, the plaintiff, was in Revell's store "around five or six o'clock in the afternoon of the 24th of September, 1921, and that at such time he was "perfectly sober," that "he did not talk like he had had a drink." He knew Spangler well; had known him for years. He heard he had been assaulted in the theatre, and two days thereafter he met Spangler on the street. His face at the time showed the effect of the assault. From these facts he was enabled to recall the day he was in the store.

Walter Tall also testified that he saw Spangler on the afternoon of the 24th of September, 1921; he was at the time standing on the southwest corner of Gay and Fayette Streets; that Spangler spoke to him and, after exchanging some words, Spangler asked him if he did not want to go to

the moving pictures; it was then after five o'clock. Witness declined the invitation. When asked what his condition was, witness said he was "perfectly sober."

Slitzer testified that he was employed by the defendant company as doorkeeper in the theatre. That it was his duty to take the tickets at the door and to see that no "undesirables" came in, and if any entered, to "take them out and tell the cashier" to refund to them their money. He then stated, as it appears in the record, "that on Sept. 24 (1921), at 5.30 P. M., plaintiff came in with a ticket; the door being open, you could see just who was coming in and who was going out. The plaintiff had staggered in the door, which is the door right next to the ticket office; in the meantime a gentlemen in the theatre was going out the middle door, and the door being opened, three of them came in; and at that time plaintiff had gotten the fourth tread from the floor going up in the balcony. The witness took his ticket and told him under his conditions he could not let him in, could not admit him, that he must come back when he was sober. He walks out and witness gives the ticket to the cashier and told the cashier to refund his money. The cashier is about four or five feet on the pavement away from the door; she refunds the money. Witness walks back and takes his position at the door inside. A minute elapses and witness walks out to tell the cashier why his money was refunded; so that he could make a note and turn it in to the boss. While witness was talking to the cashier, plaintiff comes down the street and says, 'Here, buy yourself a drink.' Witness said, 'I don't want your money. You will have to come back when you are sober.' " The plaintiff stood upon the pavement and cursed the witness and applied to him opprobrious epithets, "by that time three or four women walked in and witness told plaintiff that he would have to go away or he would call an officer * * * and plaintiff hit at the witness and the latter struck him. The plaintiff fell down and hurt his face and was bloody." The court then asked witness,

"Did I understand you to say you hit him," and the witness replied, "He hit at me and in some way I threw his arm down and hit him." Slitzer also testified that, at the time he struck plaintiff, the latter was about six feet from the door, about three feet from the curb line, and about ten or twelve feet from the ticket office. He further testified that the plaintiff never got any nearer the balcony than four treads, and that there was no disturbance at all when he went out with the plaintiff and gave to him the money. That the disturbance occurred when the witness went to the cashier's box to explain to her why the money was refunded to the plaintiff. That it was then that the difficulty occurred. Slitzer further testified that the plaintiff was under the influence of liquor at the time, he "could smell it and see it on him, because he was staggering as he came in the door." Upon cross-examination Slitzer testified "that plaintiff's nose might have been broken before we started," though he guessed that plaintiff's nose was broken by the blow he dealt him and that his two eyes were blackened in the same way.

William J. Kemp, the policeman who arrested both Slitzer and the plaintiff, because of the disturbance created by them on the occasion mentioned, testified that plaintiff, when arrested, was leaning over the curb on Fayette Street opposite the Rivoli theatre doorway and his nose was bleeding very freely, and that he was under the influence of liquor. He asked plaintiff what had happened and plaintiff pointed to Slitzer and said, he had hit him in the nose. The witness then asked Slitzer if he had hit him, and he said, "yes." On cross-examination the witness said that the plaintiff had been hit "an awful crack"; that the next day he had "two black eyes"; he did not know about the broken nose.

The question whether the act of the servant complained of was done in the furtherance of the master's business, within the scope of the servant's employment, is generally one of fact to be decided by the jury. *Consol. Rwy. Co.* v. *Pierce,* 89 Md. 503; *Deck* v. *Balto. & O. R. R. Co.,* 100 Md. 182; *Balto. & O. R. R. Co.* v. *Strube,* 111 Md. 127.

The evidence of the defendant shows that Slitzer, the party charged with assaulting the plaintiff, was at the time of the alleged assault employed by the defendant company as doorkeeper at the theatre. Slitzer, himself, testified that it was his duty to take the tickets when presented at the door and to see that no "undesirables" entered the theatre; if they did, to "take them out and tell the cashier," and refund to them the money paid for their ticket.

The plaintiff and Slitzer differ as to the point reached by the plaintiff when Slitzer interposed objection to his entering or remaining in the theatre, but whether he had only reached the fourth tread of the stairs or had fully ascended the stairs and was about to be seated, cannot affect the decision of this case, for it could hardly be said that it was his duty to stop one who had partially ascended the stairs, but not his duty to prevent one who had fully ascended the stairs. It is, however, contended by the defendant that the assault complained of was not committed by Slitzer while he was acting in the course of his master's service and within the scope of his employment, inasmuch as said assault was committed upon the street, and not upon the premises or in the theatre of the defendant, from which the plaintiff was ejected.

We cannot adopt this contention, for the plaintiff testified that, when he was about to be seated, he was grabbed by Slitzer and was struck in the side by him several times while being shoved down the stairs, and, when they reached the ticket box, Slitzer got from the ticket seller the money the plaintiff had paid for his ticket, and handed it to him, which Slitzer says was part of his duty and when, as he did so, he, without any justification whatever, as stated by the plaintiff, struck the plaintiff, knocking him in the gutter. This last assault, even though upon the street, was, we think, under the circumstances, but a continuation of the previous assaults made, as conceded by Slitzer, while he was acting in the furtherance of his master's business and within the scope of his employment. *Balto. & O. R. R. Co.* v. *Strube, supra;*

and as we have said, by the testimony of the plaintiff, the blow was struck when Slitzer was still performing what he says were the duties imposed upon him under his employment by the defendant company.

There was evidence in this case, we think, legally sufficient to be submitted to the jury as tending to show that Slitzer was at the time of the alleged assault the agent or servant of the defendant, and was at such time acting in the course of his master's service and within the scope of his employment. Consequently we find no error in the action of the court in refusing to grant the defendant's prayer and in overruling the defendant's special exceptions to the plaintiff's prayers; nor in the court's action in granting the plaintiff's first and second prayers.

In the first exception the witness, Ayres, who had seen the plaintiff only a few minutes before he went to the theatre of the defendant on the occasion of the alleged assault, and who had stated that at that time the plaintiff was perfectly sober, was asked if he ever saw him (the plaintiff) under the influence of liquor; and in the second exception he was asked "Do you recall his condition at any other time?"

To each of these questions an objection was interposed and sustained. Whether the witness recalled plaintiff's condition at any other time, or whether he had ever seen him under the influence of liquor, were not, we think, under the facts of this case, questions material to the issues.

The third and fourth exceptions are to the rulings of the court in permitting the plaintiff's witness, Tall, who likewise had seen the plaintiff only a short time before the alleged assault, to be asked in the third exception, "Will you describe his condition at that time?" and in the fourth to "describe his physical condition." The plaintiff was charged with being drunk at the time of the alleged assault and, after his assault, he was described as having a broken nose, black eyes and a bloody face. In view of this evidence it was

certainly proper to show his condition as to sobriety, as well as physically, at so short a time before the alleged assault.

The defendant, at the conclusion of the plaintiff's evidence, offered a prayer to take the case from the jury for want of evidence legally sufficient to entitle the plaintiff to recover. This prayer was refused, and the fifth exception is to the action of the court in refusing it, although the defendant thereafter offered evidence in his behalf.

This ruling of the court is not open to review. If there was error in the court's ruling thereon, the defendant waived such error by proceeding to offer evidence in defense. *Barabasz* v. *Kabat,* 91 Md. 55; *New York, P. & N. R. R. Co.* v. *Jones,* 94 Md. 35; *United Rwys. Co.* v. *Deane,* 93 Md. 624.

The sixth exception is to the ruling of the court in allowing the witness, Slitzer, to be asked if he were not convicted of assault upon the plaintiff on the occasion here mentioned. Slitzer had said that the plaintiff had attempted to strike him before he struck plaintiff, while the plaintiff testified that he had done nothing whatever to justify the assault. A like question was asked and admitted in *Balto. & O. R. R. Co.* v. *Strube, supra,* and this Court said: "The plaintiff's testimony tended to prove that the assault was not justified. The witness's testimony tended to prove that it was. * * * The answer affects the weight of witness's testimony as to the character of the assault, and therefore in a sense his credibility as a witness."

This question, we think, was properly admitted under the facts of this case; and, as we find no error in any of the Court's rulings, we will affirm the judgment appealed from.

*Judgment affirmed, with costs.*