RONALD M. COX ET AL. *v.* PRINCE GEORGE'S
COUNTY, MARYLAND

[No. 172, September Term, 1981.]

*Decided June 3, 1983.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Louis Fireison,* with whom were *Daniel Blum* and *Fireison & Olshonsky, P.A.* on the brief, for appellants.

*David S. Bliden, Associate County Attorney,* and *Robert B. Ostrom, County Attorney,* with whom was *Michael O. Connaughton, Deputy County Attorney,* on the brief, for appellees.

COLE, J., delivered the opinion of the Court.

This case comes to us as an appeal and cross-appeal raising two questions. The first question, raised by the appellant, Cox, is whether Prince George's County police officers are servants of the county so as to render the county liable for their torts committed while performing acts within the scope of their employment. The second question, raised by the cross-appellant, Prince George's County, is whether, as a matter of law, a police officer's malicious and intentional acts are outside the scope of his employment. These issues arise as the result of the circuit court sustaining a demurrer without leave to amend; therefore, the only pertinent facts are those alleged in the declaration.

The declaration filed by the parents of Ronald Melvin Cox as next friend alleged a cause of action in counts 4, 5 and 6 based on false arrest, intentional infliction of emotional harm and false imprisonment.[1] It alleges that Prince George's County maintains, directs, and is responsible for the actions of the Prince George's County Police Department. According to the declaration, two county police officers, who were working with a police dog, "while acting within the scope of their employment," maliciously and intentionally allowed and encouraged the dog to attack and bite Cox, "in clear and substantial excess of the force needed to restrain and detain" him. The declaration further avers that the two officers subsequently beat and further injured Cox without justification and, again, that the officers were under the control and supervision of the county.

Prince George's County demurred to Cox's declaration on the ground that police officers are the agents of the State, not the local political subdivision which hired them, relying on the holding in *Wynkoop v. Hagerstown,* 159 Md. 194, 150 A. 447 (1930). The county also claimed that, as a matter of law, the actions of the police officers alleged in Cox's declaration were outside the scope of their employment and, thus, even

---

1. Plaintiff's declaration contains 7 counts but at oral argument plaintiff conceded that counts 4, 5, and 6 were the only counts to be considered in our review.

if the officers could act as agents of the county, the county could not be held liable for their actions. The Circuit Court for Prince George's County sustained the county's demurrer and certified the issue for appeal pursuant to Maryland Rule 605(a). The case was appealed to the Court of Special Appeals, which affirmed the circuit court in a reported opinion, *Cox v. Prince George's County,* 51 Md. App. 40, 445 A.2d 27 (1981). We granted the petition for certiorari and shall reverse.

It is settled law, and fundamental to the concept of vicarious liability under the doctrine of *respondeat superior,* that the tortious actor must be the servant or agent of the one sought to be held liable, that is, that a master-servant or principal-agent relationship must exist. Once this first step is established, then the plaintiff must show that the offending conduct occurred within the scope of the employment of the servant or under the express or implied authorization of the master. *See Globe Indemnity Co. v. Victill Corp.,* 208 Md. 573, 584, 119 A.2d 423 (1956). The county argues that *Wynkoop* is conclusive authority for the proposition that the county is not the master or principal in its relationship *vis-a-vis* the Prince George's County Police Department. It contends that police officers are agents of the State. Thus, maintains the county, the necessary first step in tracing liability back to the principal has not been met. Since both the Circuit Court for Prince George's County and the Court of Special Appeals consider *Wynkoop* to be the seminal decision on this point, we shall begin our discussion with an analysis of that case.

In *Wynkoop,* a resident of the City of Hagerstown brought a three count declaration against Hagerstown, averring that the city failed to abate a public nuisance; that the city created a public nuisance; and that the City failed to enforce an ordinance. The plaintiff alleged that a Hagerstown police officer had returned a loaded revolver to an intoxicated man after the man's wife had given the gun to the officer, fearing that her husband would use it to injure or kill her. The armed and inebriated husband then left his home and entered the home of the plaintiff, Wynkoop, and shot him.

The Court styled the issue as "whether upon these facts the appellant [Wynkoop] is entitled to recover from the Mayor and Council of Hagerstown compensation for the injuries he suffered at the hands of Lutman [the armed husband]." 159 Md. at 198.

The Court began its resolution of the issue before it by noting that "[t]he rule almost universally recognized in common law countries is that there can be no recovery against a municipal corporation for injuries occasioned by its negligence or nonfeasance in the exercise of functions essentially governmental in character." *Id.* The Court discussed this concept of governmental immunity as a prelude to determining under what circumstances a municipality may be liable. After referring to an exception to the principles of governmental immunity for municipalities in the case of maintenance of roads, the Court stated that "in no case in this State has it been held that a municipality is answerable for injuries caused by its failure to properly discharge a duty imposed upon it as the direct agent of the State." *Id.* at 200.

It is only after laying the above foundation that the *Wynkoop* Court begins to discuss the way that police officers fit into this analysis. First, the Court notes that "it is well settled that such officers appointed by a city, are not its agents or servants, *so as to render it responsible for their unlawful or negligent acts in the discharge of their duties."* *Id.* (emphasis supplied). The Court plainly does not say that for all purposes police are not the agents or servants of the municipality for which they work but says that their relationship with the municipality is not such that it renders the municipality liable for their nonfeasance or misfeasance. The italicized clause clearly and unmistakably makes this point. It is only in this context that the Court makes the statement, referred to by the county in the case *sub judice,* that "police officers['] . . . duties are of a public nature, and that whether appointed by it or not they are not municipal servants or agents, and that the municipalities for which they are appointed will not be responsible for their acts or omissions as public officers. . . ." *Id.* at 201.

*Wynkoop* is not an exposition on the principles of agency. There is no discussion of the elements of a master-servant relationship; no analysis of control; no reference to the significance of who does the hiring and firing, supervising and training; or who pays whose salary.

*Wynkoop* is, however, an early case in the development of the governmental immunity doctrine. As such it has been limited by the subsequent evaluation of that concept in the decisions of this Court. Moreover, the scope of governmental immunity is not an issue in this case.

Here the people of Prince George's County, a charter county, have pursuant to the Express Powers Act, Article 25A, § 5 (CC) waived their immunity from suit and within defined limits have indicated their intention to be responsible for the tortious acts of their agents and employees. They expressed this intent in § 1013 of their charter as follows:

> [t]he County may be sued in actions sounding in tort by actions filed in the courts of the State of Maryland, or in the United States District Court for the District of Maryland, with a maximum liability of Two-Hundred Fifty Thousand dollars ($250,000) per individual, per occurrence, to the extent of its insurance coverage, whichever may be greater. The County shall carry liability insurance to protect itself, its officers, agents, and employees. Nothing herein shall preclude the County from meeting the requirements of this section by a funded self-insurance program, and nothing herein shall be deemed to be a waiver of any charitable, governmental, or sovereign immunity which any officer, agent, or employee shall otherwise have, by reason of any Statute of the United States of America, public general law of the State of Maryland, or common law as determined by the courts of the State of Maryland.

In *Bradshaw v. Prince George's County,* 284 Md. 294, 396 A.2d 255 (1979), we interpreted § 1013 as waiving the

county's immunity and subjecting it "to liability under the same circumstances as if it were a 'private person.'" *Id.* at 301. However, we held that under the doctrine of *respondeat superior,* § 1013 did not provide for the liability of the county for non-malicious actions of its police officers performed within the scope of their authority. We reasoned that pursuant to this doctrine the nature of the county's liability is derivative so that immunity of the employee precludes recovery from the principal county. Noting that police officers as public officials enjoy immunity from liability for non-malicious acts within the scope of their enforcement function, we concluded that, under the doctrine of *respondeat superior,* because the employee could not be held liable neither could the county.

We were quick to retreat from that part of our holding in *Bradshaw.* In *James v. Prince George's County,* 288 Md. 315, 418 A.2d 1173 (1980), after recognizing that Prince George's County had effectively abrogated its governmental immunity by enacting § 1013, we concluded that

> a court should not . . . treat Prince George's County as a private entity with public-official agents, but rather as a private entity utilizing private persons as its agents. . . . Consequently, if the complained of conduct is performed by a county representative while acting within the scope of his employment but in a negligent manner, Prince George's County will be subject to suit for the resulting damage, without regard to the fact that the agent has public-official immunity. *Id.* at 331 (citations and footnote omitted).

*James* then, makes it clear that although a police officer may enjoy public-official immunity, he still may be an employee of a charter county which has organized its own police department as in the instant case. It is this employer-employee relationship to which § 1013 applies, notwithstanding the fact that a police officer would not be personally liable for negligent conduct committed within the scope of employment due to his public-official immunity.

And, as we recognized in *Bradshaw,* a police officer does not enjoy this immunity if he commits an intentional tort or acts with malice. *Bradshaw, supra* at 303. *See also Brewer v. Mele,* 267 Md. 437, 444, 298 A.2d 156 (1972); *Robinson v. Bd. of County Comm'rs,* 262 Md. 342, 346, 278 A.2d 71 (1971); *Duncan v. Koustenis,* 260 Md. 98, 104, 271 A.2d 547 (1970).

We hold, therefore, that when a county has waived its governmental immunity, it is responsible under the doctrine of *respondeat superior* for the tortious acts of its employees which occur in the course of their employment. The question before the trial court then was whether the plaintiffs sufficiently alleged that the police officers were employees of the county at the time of the events described, and if so, whether they were acting within and in furtherance of that employment.

Here, the declaration filed by Cox in the case *sub judice* alleged that Prince George's County maintained, directed and was responsible for the actions of the Prince George's County Police Department and that the offending officers were under the control and supervision of Prince George's County at the time of the incident from which the lawsuit arose. Since the burden is on the plaintiff to show that a master-servant relationship exists, *Globe Indemnity Co. v. Victill Corp., supra,* it will be up to Cox to substantiate the allegations of agency contained in his complaint. For the purposes of a demurrer, however, the allegations in the declaration must be taken as true. Poe, *On Pleading* (Tiffanys 5th Ed. 1925), Sec. 705; *Walker v. D'Alesandro,* 212 Md. 163, 167, 129 A.2d 148 (1957); *Martin G. Imbach, Inc. v. Deegan,* 208 Md. 115, 122, 117 A.2d 864 (1955); *DeBoy v. Harris,* 207 Md. 212, 218, 113 A.2d 903 (1955); *Adams v. Baltimore Transit Co.,* 203 Md. 295, 298, 100 A.2d 781 (1953); *Willoughby v. Trevisonno,* 202 Md. 442, 448, 97 A.2d 307 (1953). We hold, therefore, that the trial court should not have sustained the demurrer on this basis.

Having concluded that *Wynkoop* does not prevent Cox from establishing a master-servant relationship between Prince George's County and the members of its police

department, we turn our attention to the second question, presented by the cross-appeal, *i.e.,* whether a police officer's malicious, intentional acts are outside the scope of his employment as a matter of law. This area of law is well settled and will not require protracted discussion.

In *Amusement Co. v. Spangler,* 143 Md. 98, 121 A. 851 (1923), a doorkeeper for a theatre company forcefully ejected and thereafter assaulted a drunken customer who sought entrance to the theatre after purchasing a ticket, which the doorkeeper had the cashier refund. This Court held that a jury question was generated in that there was evidence that the assault was committed by the employee while acting in the course and in furtherance of his master's service and within the scope of his employment since the employee had instructions to eject "undesirables." In accordance with *Spangler,* this Court has stated on a number of other occasions that "[t]he master is responsible for the wrongful acts of his servant, even though they be wilful, or reckless, if the act done by the servant be within the scope of his employment, and in furtherance of his master's business." *Tea Company v. Roch,* 160 Md. 189, 192, 153 A. 22 (1931); *Cate v. Schaum,* 51 Md. 299, 308 (1879). "[A]n act may be within the scope of the employment, even though forbidden or done in a forbidden manner . . . , or consciously criminal or tortious." *A & P Co. v. Noppenberger,* 171 Md. 378, 391, 189 A. 434 (1937) (and cases cited therein). We have also noted that the simple test for determining vicarious liability under the principle of *respondeat superior* "is whether they were acts within the scope of his employment; not whether they were done while prosecuting the master's business, but whether they were done by the servant in *furtherance thereof, and were such as may fairly be said to be authorized by him." Drug Fair v. Smith,* 263 Md. 341, 350, 283 A.2d 392 (1971) (emphasis in original).

"We recognize that the issue of whether a servant is acting within the scope of his employment is ordinarily a question for the jury. . . ." *Drug Fair v. Smith, supra,* at 346-47. In *LePore v. Gulf Oil Corp.,* 237 Md. 591, 207 A.2d 451 (1965),

this Court quoted The Restatement of Agency 2d, § 245 for the relevant principles.

> A master is subject to liability for the intended tortious harm by a servant to the person or things of another by an act done in connection with the servant's employment, although the act was unauthorized, if the act was not unexpectable in view of the duties of the servant.

Comment C, thereunder, Page 539 says:

> *Nature of Employment.* Whether or not an employment involves or is likely to lead to the use of force against the person of another is a question to be decided upon the facts of the individual case. To create liability for a battery by a servant upon a third person, the employment must be one which is likely to bring the servant into conflict with others. *Id.* at 597.

In the instant case, Prince George's County argues that according to Cox's allegations the police officers were acting maliciously, intentionally, and therefore outside the scope of their employment. As we have just observed, however, a master may be held liable for the intentional torts of his servant where the servant's actions are within the scope and in furtherance of the master's business and the harm complained of was foreseeable. We think the declaration in the instant case meets these criteria sufficiently to overcome a challenge based on a demurrer.

> *Judgment of the Court of Special Appeals reversed and case remanded to that Court to reverse the judgment of the Circuit Court for Prince George's County and to direct that Court to overrule the defendant's demurrer.*
> *Prince George's County to pay costs.*