688 A.2d 448

Robert T. THOMAS,

v.

CITY OF ANNAPOLIS, et al.

No. 383, Sept. Term, 1996.

Court of Special Appeals of Maryland.

Jan. 31, 1997.

442

Mark F. Wilson (Gregory K. McGillivary, Mulholland & Hickey, Washington, DC, Allen W. Cohen and Cohen, Bennett & Greene, P.A., Annapolis, on the brief), for Appellant.

Rignal W. Baldwin, Jr. (Jonathan P. Kagan, Brassel & Baldwin, P.A. and Paul G. Goetzke, on the brief), Annapolis, for Appellees.

Argued before CATHELL, DAVIS and EYLER, JJ.

EYLER, Judge.

Robert T. Thomas, appellant herein and plaintiff below, appeals from the entry of summary judgment in favor of City of Annapolis (Annapolis), Mayor Alfred A. Hopkins (Mayor

Hopkins), Fire Chief Edward P. Sherlock, Jr. (Chief Sherlock), Deputy Chief Charles W. Smith, III (Chief Smith), and Sergeant Stanley Malm (Sgt. Malm), appellees herein and defendants below.

At the time the pertinent events began to unfold, appellant was a firefighter employed by the Annapolis Fire Department. Appellee Mayor Hopkins was the Mayor of Annapolis, Chief Sherlock was the Fire Chief of the Annapolis Fire Department, Chief Smith was the Deputy Fire Chief of the Annapolis Fire Department, and Sgt. Malm was a sergeant employed by the Annapolis Police Department.[1]

The events in question were an outgrowth of an internal investigation by the Annapolis Police Department revolving around allegations that police personnel had engaged in on-duty sexual activities. The police department's investigation had begun in the summer of 1991, when Sgt. Malm was informed that persons whom we identify in this opinion as Cheryl B. and Pam H. may have, on several occasions, engaged in consensual sex with Annapolis Police Department personnel while such personnel were on duty. In August of 1991, the Annapolis Police Department informed Chief Sherlock of the Annapolis Fire Department that Annapolis Fire Department personnel were also alleged to have participated in on-duty sexual activities with the same females. Chief Sherlock began his own inquiry into the allegations and assigned Chief Smith to supervise the investigation of Fire Department personnel. Because of the interrelated nature of the two inquiries, the Annapolis Police Department assigned Sgt. Malm to coordinate the police department's investigation with the fire department's investigation.

Sgt. Malm interviewed Cheryl B. under oath on August 19, 1991 and September 13, 1991, concerning any sexual encounters she may have had with on-duty fire department personnel. In sworn statements, she specifically implicated several

---

1. At some point in time subsequent to the proceedings involved in this case, Sgt. Malm was promoted to lieutenant.

individuals, including appellant. By the latter part of October, many of the named individuals had been interviewed and some had admitted to on-duty sexual activities with Cheryl B. and Pam H. Appellant was interviewed on October 16, 1991 but denied any improper conduct. While many of the improper activities involving other members of the police and fire departments occurred close in time to the inquiry, the alleged events involving appellant were said to have transpired several years earlier.

With respect to appellant, Cheryl B. stated that, during one occasion when she and Pam H. were at the fire station, she engaged in sexual intercourse with appellant while he was on duty. Cheryl B. also stated that, on another occasion when appellant was on duty, she witnessed appellant and Pam H. enter an ambulance located at the fire station, after which Cheryl B. was told by Pam H. that she and appellant had engaged in sexual activities while inside the ambulance. Another witness and associate of Cheryl B. and Pam H., whom we identify as Karen D., also stated that, on an occasion when she and Cheryl B. were at the fire station, she witnessed appellant and Cheryl B. enter an ambulance after which Cheryl B. told her that appellant and Cheryl B. had engaged in sexual intercourse. The testimony of other firefighters also placed appellant and Cheryl B. near an ambulance on one occasion and, on at least one other occasion, in a parking lot near a car owned by Pam H., all while appellant was on duty.

On October 30, 1991, the results of the investigation were given to Chief Sherlock. On November 1, 1991, appellant and another firefighter, Lieutenant Kenneth E. Rowe, Jr., were given notices of termination of employment effective November 21, 1991, based on information that they had participated in sexual misconduct while on duty and giving false statements to investigators.

As a result of the various rumors surrounding the investigation, a press conference was also conducted by Mayor Hopkins on November 1, 1991. Mayor Hopkins stated that, as a result of the investigation, two male members of the police depart-

ment and five male members of the fire department had been disciplined for sexual misconduct. Specifically, the Mayor stated that three members of the departments had been given notices of termination, but the Mayor did not mention any specific names. Appellant's name and the names of other disciplined personnel first appeared in the press on November 5, 1991, though it was alleged by appellant that the press was aware of the names on October 31, 1991. Appellant produced no evidence that the Mayor knew that the press had the names at the time of his press conference. Appellant also did not produce any evidence indicating how the press obtained those names and, consequently, there was no direct evidence indicating that any of the appellees released the appellant's name to the press or any other member of the public. In appellant's own words, he testified at his deposition on May 23, 1995 that he was "guessing" that his name had been revealed to the press by one or more of the appellees.

After receiving his notice of termination on November 1, appellant requested a hearing before the Civil Service Board of Annapolis. The hearing was held on December 6, 1991, at which time several of the involved parties were called to testify, including Karen D. While a transcript of this hearing was not made part of the record, Karen D. apparently recanted her previous statements made under oath. After Karen D. recanted her testimony but prior to completion of the hearing, Chief Sherlock withdrew the notice of termination as to appellant. In an affidavit dated November 13, 1995, filed in support of appellee's motion for summary judgment, Chief Sherlock stated that the withdrawal of the notice was based on "the conduct of the proceedings and information provided during the course of the proceedings." On December 9, 1991, appellant was reinstated with back pay and all benefits. Over appellant's objection, the Civil Service Board decided that it no longer had jurisdiction to continue the proceedings and dismissed the case.

Two members of the fire department and two members of the police department admitted the truth of the accusations made against them and were disciplined. Other employees

denied the allegations. Of all employees implicated, it appears that only appellant and Lieutenant Rowe were discharged. Like appellant, Lieutenant Rowe has also filed a civil action in the Circuit Court for Anne Arundel County, which is pending.

Appellant filed his initial complaint on September 11, 1992 and an amended complaint on October 30, 1992. The amended complaint contained six counts: Count I, intentional infliction of emotional distress; Count II, defamation; Count III, invasion of privacy; Count IV, "Wrongful and Malicious Civil Discharge Proceedings;" Count V, negligence; and Count VI, gross negligence. The individual appellees were sued personally and in their official capacity as agents of the City of Annapolis. There were no express allegations made against the City of Annapolis other than liability for the actions of the individual appellees.

Appellees filed a motion for summary judgment on November 14, 1995, asserting, to the extent pertinent: the absence of evidence of outrageous conduct or emotional distress to support the intentional infliction of emotional distress claim, the lack of evidence of publication of any defamatory statement or publication of any statement not of legitimate concern to the public, the lack of evidence of malice, the defense of qualified immunity, and the absence of evidence of breach of any legal duty.

Appellant filed an answer to the motion, appellees filed a reply, and, after a hearing held on December 13, 1995, appellees' motion for summary judgment was granted by order entered December 27, 1995. This appeal was noted on January 22, 1996.

### Questions Presented

Appellant poses three questions that, in essence, inquire:

1. Did the lower court err in ruling that appellees had probable cause to make public and defamatory statements?

2. Did the lower court err in ruling that public accusations were justified, given that matters of intent and ill-will were not properly resolved on summary judgment?

3. Did the lower court err in ruling that there was no publication of unlawful statements by appellees?

Appellees pose four questions that, in essence, ask:

1. Whether the lower court erred in granting summary judgment in favor of the individual appellees on the basis of public official immunity with respect to appellant's claims for negligence, gross negligence, defamation, and invasion of privacy?

2. Whether the lower court erred in granting summary judgment on appellant's claims for defamation and invasion of privacy based on the lack of evidence that appellees published or communicated any false and defamatory statements about appellant?

3. Whether the lower court erred in granting summary judgment on appellant's claims for negligence and gross negligence based on the absence of any duty as a matter of law?

4. Whether the lower court erred in granting summary judgment on appellant's claim for intentional infliction of emotional distress based on the lack of evidence of any extreme and outrageous conduct resulting in severe emotional distress.

## Contentions of the Parties

Appellant argues that there was evidence establishing the elements of each tort [2] and that the issues of probable cause, intent, and malice are issues of fact that cannot be determined on summary judgment. Appellant asserts that there is legally sufficient evidence to show that appellees encouraged wit-

---

**2.** The trial court found that appellees had "probable cause" and, on that basis, granted summary judgment on the "wrongful and malicious civil discharge" claim. Appellant makes no argument on appeal with respect to that claim and, consequently, it is not before us.

nesses to fabricate testimony, made charges against appellant without evidence, disregarded evidence of appellant's innocence, refused to tell appellant the specific allegations against him prior to termination, that they were motivated by spite because of appellant's union activities, and that they subjected appellant to disparate treatment as compared to the others who were implicated in the investigation. Appellant explains that issues of probable cause, intent, and malice are relevant because appellees claim probable cause as a shield to defamation, that the claims of intentional infliction of emotional distress, defamation, and gross negligence involve both motive and intent, and that malice is relevant to defamation and the claims of immunity. Appellant also argues that there is no privilege or immunity for intentional torts, *i.e.*, intentional infliction of emotional distress, defamation, and invasion of privacy. Finally, with respect to defamation and invasion of privacy, appellant argues that there was publication of a tortious communication based on a factual inference from the communications made to the public, and that, even if appellees did not otherwise publish appellant's name, appellant's name was "understood" by the public to be one of the individuals identified at the press conference on November 1.

Appellees argue that, in the absence of legally sufficient evidence of malice, summary judgment was properly entered in favor of the individual appellees on all claims except for intentional infliction of emotional distress, on the basis of public official immunity, pursuant to Md Code Ann., Cts & Jud.Proc. § 5–321(b) (1995 Repl.Vol.) (hereinafter, CJ § 5–321(b)). With respect to intentional infliction of emotional distress, appellees argue that there is no evidence of severe emotional distress or extreme or outrageous conduct. Additionally, appellees argue that there was no legal duty to conduct an investigation as well as no evidence of negligence in the conduct of the investigation. Finally, appellees argue that there is no evidence of publication with respect to the claims of defamation and invasion of privacy and, alternatively, that there is a common law absolute or conditional privilege applicable to the conduct of the internal investigation.

### The Standard of Review

A party is entitled to a summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Md. Rule 2–501(a); *DeBusk v. Johns Hopkins Hosp.*, 105 Md.App. 96, 658 A.2d 1147 (1995), *aff'd* 342 Md. 432, 677 A.2d 73 (1996). On appellate review of a motion for summary judgment, we examine the record to determine whether the court was legally correct in ruling that no dispute of material fact exists when all inferences are drawn against the moving party. *Hartford Ins. Co. v. Manor Inn of Bethesda, Inc.*, 335 Md. 135, 642 A.2d 219 (1994); *Heat & Power Corp. v. Air Products & Chemicals, Inc.*, 320 Md. 584, 591–92, 578 A.2d 1202 (1990). While the initial burden of proof rests squarely on the moving party, the opposing party must show by admissible evidence that there are actual material facts in dispute. Md.Rule 2–501(b).

The trial judge did not issue a written opinion, and it is difficult to determine from the colloquy with counsel the complete basis or bases for the trial court's decision. It is apparent from the transcript of the hearing that the trial court concluded that appellant failed to provide sufficient evidence to show any publication or communication of a statement that was defamatory or otherwise unlawful, as well as finding that there was insufficient evidence to show any extreme or outrageous conduct on the part of appellees. These findings were the bases, at least in part, for the ruling on defamation, invasion of privacy, and intentional infliction of emotional distress. With respect to the negligence claims, the trial court found no evidence of a breach of duty, if a duty existed.

While statutory public official immunity and common law qualified privilege were both argued in writing and orally during the summary judgment hearing, it is unclear from the transcript whether the trial court ruled on those issues in its final disposition of the case. Nevertheless, appellant, in arguing the questions framed by him on appeal, assumes that the questions of immunity and privilege are at issue in this Court.

While it would be beneficial on appeal to have a more developed understanding of the trial court's reasoning as to why summary judgment was granted, without evidence to the contrary, we must assume that the court carefully considered all the various grounds asserted and determined all or at least enough of them to merit the granting of the summary judgment. *See Bond v. Nibco, Inc.*, 96 Md.App. 127, 133, 623 A.2d 731 (1993). Since a trial judge is presumed to know the law, the judge is not required to set out in detail each and every step of his thought process. *Kirsner v. Edelmann*, 65 Md. App. 185, 499 A.2d 1313 (1985). On appeal, it is the burden of the appellant to show judicial error. *Bradley v. Hazard Technology Co.*, 340 Md. 202, 665 A.2d 1050 (1995).

 Ordinarily, an appellate court will not affirm a summary judgment by ruling on a ground not ruled upon by the trial court. If the alternative ground is one as to which the trial court had no discretion, however, summary judgment may be affirmed. *Maryland Casualty Co. v. Lorkovic*, 100 Md.App. 333, 357, 641 A.2d 924 (1994). In this case, there is no genuine dispute as to a material fact and appellees are entitled to judgment as a matter of law for the reasons discussed below.

### Public Official Immunity

Because the issues before us require an understanding of the concept of "public official immunity," clarity requires that we review the general common law and statutory principles governing it. Despite the fact that applicable statutes have been in force since 1979, common law public official immunity is still relevant in applying and interpreting those statutes and in those instances in which the statutes do not apply.[3]

---

**3.** The Maryland Tort Claims Act (MTCA) was enacted in 1982. While not applicable to this case, it is referenced because it is relevant and instructive with respect to interpretation of the other relevant statutes concerning immunity. At common law, the State and, in certain instances, public officials were immune from non-constitutional torts. Upon the enactment of the MTCA, the State waived immunity from torts committed by "State personnel," as defined in the statute, acting

The Court of Appeals has recently discussed the current status of public official immunity in *Ashton v. Brown*, 339 Md. 70, 660 A.2d 447 (1995). With *Ashton* in mind, our first objective is to determine the nature of the torts to which public official immunity applies and, if applicable, to identify the standard of conduct that will defeat the immunity.

In *Ashton*, the Court was faced with a claim for damages against the City of Frederick and members of its police department as a result of arrests for violation of Frederick's juvenile curfew ordinance. The Court held the ordinance to be unconstitutional on its face and, in doing so, discussed both

within the scope of employment, and the employee was granted immunity. Md.Code Ann., State Gov't Art. §§ 12–101 to 12–109 (previously CJ 5–401 to 5–408); CJ § 5–399.2(b). An exception to the above exists if the individual acts with "malice or gross negligence." CJ § 5–399.2(a). The MTCA makes no distinction between intentional, constitutional, or other torts and does not define "malice."

In *Sawyer v. Humphries*, 82 Md.App. 72, 570 A.2d 341 (1990), in applying the MTCA, we defined malice as "the intentional doing of a wrongful act without just cause, excuse, or justification which is reasonably calculated to injure another." The Court of Appeals, in reversing on other grounds, held that the allegations were sufficient to establish that the individual in question was not within the scope of his employment at the time of his conduct and that he acted with actual malice. ("When one person states that he is going to kill another, he clearly harbors actual malice.") *Sawyer v. Humphries*, 322 Md. 247, 261, 587 A.2d 467 (1991). Regardless of whether acts may conceptually be performed with implied malice and, therefore, not with actual malice or gross negligence, as a practical matter, generally speaking, conduct rising to the level of gross negligence or higher is not subject to immunity under the MTCA.

The Court of Appeals has held that a failure to follow the procedural requirement to maintain a suit against the State under the MTCA does not affect immunity of State personnel. *Simpson v. Moore*, 323 Md. 215, 592 A.2d 1090 (1991). A question remains, however, whether common law public official immunity exists with respect to State personnel. In other words, can an individual who is a public official at common law and within the definition of "State personnel" be immune if acting within the scope of employment and if the conduct is grossly negligent? As is apparent from our later discussion, this same question does not exist under the statutes applicable to local governments and municipal officials.

constitutional and intentional torts.[4] The *Ashton* Court, in discussing the common law intentional torts of false imprisonment and assault and battery,[5] stated that under common law "[p]ublic official immunity is not a defense to these intentional torts." 339 Md. at 117, 660 A.2d 447. With respect to non-constitutional common law torts, it had been clear, prior to *Ashton*, that immunity was available to public officials in negligence actions, if the necessary elements were present and in the absence of malice.

The common law requirements for public official immunity were set forth in *James v. Prince George's County,* 288 Md. 315, 323, 324, 418 A.2d 1173 (1980), and quoted with approval in *Ashton.* Stated briefly, in order for the immunity to apply: (1) the actor must be a public official, rather than a mere government employee or agent; (2) the conduct must have occurred while the actor was performing discretionary, as opposed to ministerial, acts; and (3) the actor must have performed the relevant acts within the scope of his official duties. If those three conditions are met, the public official enjoys a qualified immunity in the absence of "malice."

In support of its statement that public official immunity is not a defense to intentional torts, the Court of Appeals in *Ashton* cited *Parker v. State,* 337 Md. 271, 653 A.2d 436 (1995), *Cox v. Prince George's County,* 296 Md. 162, 460 A.2d 1038 (1983), *Brewer v. Mele,* 267 Md. 437, 298 A.2d 156 (1972), *Robinson v. Board of County Comm'rs,* 262 Md. 342, 278 A.2d

---

**4.** The Court's discussion of immunity from federal constitutional claims is not relevant to the issues before us. In discussing State constitutional torts, the Court confirmed that: (1) there is no immunity for municipalities and other local governments from suits based upon violation of the State's constitution; (2) no immunity for public officials acting in a discretionary capacity who violate the State constitution; and (3) the State is immune from constitutional violations in the absence of a statute. *See Clea v. Baltimore,* 312 Md. 662, 541 A.2d 1303 (1988).

**5.** The torts of intentional infliction of emotional distress and invasion of privacy were also alleged. The Court held there was insufficient evidence to establish the elements of these torts.

71 (1971) and *Mason v. Wrightson*, 205 Md. 481, 109 A.2d 128 (1954). The Court of Appeals stated that no decision by it prior to *Ashton* had *held* public official immunity applicable to an intentional tort. Similarly, we are not aware of a Court of Appeals decision prior to *Ashton* in which the Court had *held* that public official immunity was not applicable to torts having intent as an element. Moreover, with the exception of three cases, the language used in pre-*Ashton* decisions relating to public official immunity refers to acts as malicious versus nonmalicious, as opposed to intentional versus unintentional.

The three exceptions are *Parker v. State, supra, Cox v. Prince George's County, supra,* and *Carder v. Steiner,* 225 Md. 271, 170 A.2d 220 (1961). When discussing the limits of qualified public official immunity, the Court in *Carder* used the terms "actual malice or deliberate intent." 225 Md. at 276, 170 A.2d 220. In *Cox,* the Court stated that a police officer does not enjoy public official immunity if he "commits an intentional tort or acts with malice." 296 Md. at 169, 460 A.2d 1038. In both cases, the statements were *dicta* for, in *Carder,* the Court had before it only an allegation of negligence and, in *Cox,* there was evidence of actual malice. In support of its decision, the *Cox* Court cited *Brewer v. Mele, supra,* and *Robinson v. Board of County Comm'rs, supra,* and *Duncan v. Koustenis,* 260 Md. 98, 271 A.2d 547 (1970), which, as noted, all use the term "malice."

The Court of Appeals in *Parker,* confronted with an issue of absolute judicial immunity, not qualified public official immunity, stated on page 285 of the opinion:

> Indeed, while this Court has never sustained the defense of public official immunity to an intentional tort action, it is clear that judicial immunity operates to bar civil suits regardless of the nature of the tort alleged to have been committed.

337 Md. at 285, 653 A.2d 436. The Court continued and, on the same page, stated that "qualified public official immunity *may* apply only to negligence actions," 337 Md. at 285, 653 A.2d 436 (emphasis added), citing *Cox v. Prince George's*

*County, supra,* and *James v. Prince George's County, supra,* for support.

If common law public official immunity is otherwise available, we turn our attention to the nature of the conduct necessary to defeat it. As stated above, the older cases spoke in terms of "malice." *See Robinson,* 262 Md. at 347, 278 A.2d 71. In that case, the plaintiff alleged that he had been maliciously beaten during an arrest, and he filed a civil suit for damages. The Court held that an allegation that an arresting officer acted without just cause and without probable cause was sufficient to state a cause of action and sufficient to avoid immunity raised on demurrer. "We can not think of any reason," the Court of Appeals stated, "why a public official should not be held responsible for his malicious actions even though he claims they were done within the scope of his discretionary authority." *Robinson,* 262 Md. at 348, 278 A.2d 71. The *Robinson* Court relied on *Duncan v. Koustenis,* 260 Md. at 104, 271 A.2d 547, *Eliason v. Funk,* 233 Md. 351, 356, 196 A.2d 887 (1964), *Carr v. Watkins,* 227 Md. 578, 585, 177 A.2d 841 (1962), *Carder v. Steiner,* 225 Md. at 274, 170 A.2d 220, and *State use of Clark v. Ferling,* 220 Md. 109, 114, 151 A.2d 137 (1959). In all of those cases, the Court stated the general proposition that immunity is not available if a public official acts maliciously.

In *Brewer, supra,* a County Sheriff's Deputy arrested the plaintiff on the erroneous belief that he had stolen a tractor. After evidence proving ownership was provided, the charges were dismissed. The plaintiff sued the Deputy and a State policeman who prepared the charging document for false imprisonment and malicious prosecution. Summary judgment was entered for the defendants. The Court stated that there was no tort of false imprisonment because it was based upon an arrest with probable cause. The Court went on to state that it had never been called upon to decide the definition of malice necessary to defeat public official immunity in a malicious prosecution case. *Brewer,* 267 Md. at 445, 298 A.2d 156. The Court posed the question of whether the test is actual malice requiring an affirmative showing, such as in *Robinson,*

*supra,* or whether it is sufficient to infer malice from want of probable cause. While the Court did not discuss the issue further because it found that probable cause existed as a matter of law, it assumed that "actual malice" is the requisite level of malice. 267 Md. at 445, 298 A.2d 156.

This Court, when holding public official immunity to be applicable, has defined malice as "actual malice." *Leese v. Baltimore County,* 64 Md.App. 442, 479–81, 497 A.2d 159 (1985). In *Leese,* a case frequently cited by litigants, this Court was presented with an action against the County and several of its employees arising from the termination of employment of the plaintiff. This Court recited the general test for public official immunity, including that the individual must act without "actual malice." *Leese,* 64 Md.App. at 479, 497 A.2d 159. We defined "actual malice" as "an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and wilfully injure the plaintiff." *Id.* at 480, 497 A.2d 159. We acknowledged that actual malice may be inferred and held that the complaint in that case was sufficient to state malice and, consequently, to defeat immunity at the pleading stage. In support of the proposition that actual malice is the test, this Court in *Leese* cited *Bradshaw v. Prince George's County,* 284 Md. 294, 303–303, 396 A.2d 255 (1979), *Robinson,* 262 Md. at 346–47, 278 A.2d 71, *Arrington v. Moore,* 31 Md.App. 448, 464, 358 A.2d 909 (1976), and *H & R Block, Inc. v. Testerman,* 275 Md. 36, 338 A.2d 48 (1975).

Addressing these decisions in inverse order, *H & R Block* dealt with the standard for punitive damages, not malice in the context of immunity. In *Arrington,* this Court was presented with a case against city police officers and the mayor, all of whom were sued for assault and battery, false arrest, and libel. Relying on *Brewer, supra,* and *H & R Block, supra,* in applying actual malice as the standard, we held that the officials were entitled to immunity and that there was no evidence of actual malice. As a result, we reversed a jury verdict for the plaintiff. The Court of Appeals, in both *Bradshaw* and *Robinson, supra,* stated that public official

immunity is available in the absence of "malice," without further defining the term.

The Court of Appeals, while perhaps not squarely so holding, has approved and applied the actual malice standard. *See Clea*, 312 Md. at 676, 541 A.2d 1303. In *Clea*, it was conceded in oral argument that "the qualified immunity for public officials acting in a discretionary capacity, generally based upon the presence or absence of actual malice, has not heretofore been applied by this Court to violations of constitutional rights." 312 Md. at 678, 541 A.2d 1303.

 Based on the above discussion, we conclude that common law public official immunity is not available with respect to deliberate acts that form the basis for intentional torts or acts committed with actual malice. In order to harmonize prior case law with the decision of the Court of Appeals in *Ashton*, we conclude that the cases using the term "malice" used it in a broad sense to include any deliberate, intentional, nonprivileged, non-legally justified act [6] or one committed with actual malice.

---

**6.** The concept of "malice," as used in the context of common law public official immunity should not be confused with the "actual malice" required to support a claim for punitive damages, even in the intentional tort context. *See Owens–Illinois, Inc. v. Zenobia*, 325 Md. 420, 601 A.2d 633, *reconsideration denied*, 325 Md. 665, 602 A.2d 1182 (1992), and its progeny. *Zenobia* applied to non-intentional torts and held that implied malice or gross negligence is insufficient to support an award of punitive damages. For the purposes of punitive damages, actual malice is defined as an intent to injure, an evil motive, fraud, or actual knowledge of a defect in a product coupled with a deliberate disregard of the consequences.

In *Adams v. Coates*, 331 Md. 1, 626 A.2d 36 (1993), the Court of Appeals held that *Zenobia* governs any award of punitive damages, even those based on intentional torts. In *Ellerin v. Fairfax Sav., F.S.B.*, 337 Md. 216, 652 A.2d 1117 (1995), involving fraud or deceit, the Court repeated that no punitive damages will lie for a wrongful act committed in an honest assertion of a supposed right, or in discharge of a duty, or without an evil or bad intention. With respect to fraud, a plaintiff need show actual knowledge of falsity to support punitive damages, and a showing of reckless indifference will not suffice (provided either is coupled with an intent to deceive). In *Montgomery Ward v. Wilson*, 339 Md. 701, 664 A.2d 916 (1995), the Court of Appeals stated that punitive damages are not available in a false imprisonment or malicious prose-

Even though public official immunity is not applicable to intentional acts, it is important to bear in mind that a public official, such as a policeman or a fireman, in performing his or her discretionary duties within the scope of employment, in the absence of actual malice and without actual knowledge of wrongdoing, generally will not have committed actionable conduct. This is because the individual will not be guilty of an intentional tort in the first instance because the conduct is legally justified or, alternatively, depending on a court's conceptual analysis, be subject to some qualified or conditional privilege other than public official immunity. The facts in *Ashton* present an exception to that general statement, *i.e.*, when a facially unconstitutional ordinance is involved, the public official's conduct could constitute both a constitutional tort and a common law intentional tort without any actual knowledge of wrongdoing by the individual.

### Statutory Enactments

The Local Government Tort Claims Act (LGTCA), Md.Code Ann., Cts & Jud.Proc. § 5–401 to 5–404 (hereinafter, CJ § 5–401 et seq.), applies to all suits against local governments arising from events occurring on or after July 1, 1987. The LGTCA covers municipalities and counties and applies to "employees," as distinguished from the common law concept of public officials, and it applies to all torts without distinction, including intentional and constitutional torts.[7] Under the LGTCA, local governments, except to the extent common law immunity is incorporated, have no immunity from torts of their employees unless committed with "actual malice." Further, under the LGTCA, the employees are immune from

---

cution action based on implied malice. For this purpose, an inference from lack of probable cause may support compensatory damages but will not support punitive damages.

**7.** The *Ashton* Court explained that the rationale for the absence of immunity for public officials who violate the State constitution, namely, that there has to be a remedy to restrain government officials, does not apply when the government entity itself is not immune. *Ashton*, 339 Md. at 105–06, 660 A.2d 447.

execution on any judgment if they acted within the scope of their employment and without "actual malice." "Actual malice" is defined for the purposes of the LGTCA as "ill will or improper motivation." CJ § 5–401(b).

Section 5–403(e) of the LGTCA provides that the local government may assert any common law or statutory defense or immunity in existence as of June 30, 1987 and possessed by the employee. Relevant to this discussion, the governmental entity may, as a consequence, assert common law public official immunity as a defense if possessed by an employee.[8] *See* CJ §§ 5–401 to 5–404.

The other statute relevant to this discussion provides officials of municipal corporations with immunity from torts. The statute was first enacted in 1979 as Md.Ann.Code art. 23A, § 1B, and now appears at Md.Code Ann., Cts & Jud.Proc. § 5–321 (hereinafter, CJ § 5–321). The statute provides that, except for torts arising from the operation of a motor vehicle, an official of a municipal corporation is immune from civil liability for all acts committed while acting in a discretionary capacity, if those acts are done without malice and within the scope of employment. CJ § 5–321(b). The statute does not distinguish between intentional and unintentional or constitutional and nonconstitutional torts and does not define the requisite level of malice. In *Ashton*, the Court of Appeals raised, but did not decide, the question of whether this statute codifies common law immunity or whether it applies to intentional and constitutional torts. *Ashton*, 339 Md. at 116, 660 A.2d 447.

In *Elliott v. Kupferman*, 58 Md.App. 510, 473 A.2d 960 (1984), we applied CJ § 5–321's predecessor, art. 23A, § 1B(a).

---

8. Unlike the State, a local government enjoyed immunity at common law only if performing a governmental, as distinguished from a proprietary, function. Additionally, such entities did not enjoy immunity from constitutional violations. See *Tadjer v. Montgomery County*, 300 Md. 539, 479 A.2d 1321 (1984) for an in-depth discussion of the distinction between governmental and proprietary functions. The LGTCA waived immunity of local governmental entities, but only to the extent determined by the terms and conditions of the statute.

There we stated that the elements for determining who is an "official" to satisfy the statute are the same as at common law, citing *James v. Prince George's County, supra,* and we defined malice for the purposes of this statute as an intentional act done knowingly for an improper purpose without legal justification or excuse. *Elliott,* 58 Md.App. at 526, 473 A.2d 960. In *Davis v. DiPino,* 99 Md.App. 282, 637 A.2d 475 (1994), *rev'd on other grounds,* 337 Md. 642, 655 A.2d 401 (1995), we interpreted CJ § 5–321. In *Davis,* a case involving the arrest of the plaintiff by a city policeman in which the plaintiff asserted constitutional violations, we applied CJ § 5–321(b)(1) and held that the statute changed common law and established municipal official immunity for State constitutional torts. We also stated that the malice required is actual malice, relying on *Leese v. Baltimore County, supra. Davis,* 99 Md.App. at 290–91, 637 A.2d 475.

Before applying the above principles to appellant's case, we first note that, with respect to the tort of intentional infliction of emotional distress, there is no evidence of extreme or outrageous conduct on the part of appellees sufficient to create a jury issue. *See Batson v. Shiflett,* 325 Md. 684, 735, 602 A.2d 1191 (1992) (stating that it is for the court to determine the sufficiency of evidence needed to plead this tort). With respect to appellant's remaining claims of defamation, invasion of privacy, negligence, and gross negligence, assuming without deciding that there was sufficient evidence to create a jury issue with respect to elements of the torts, we apply the above principles and conclude that summary judgment was properly entered based on the immunity granted by CJ § 5–321 and CJ § 5–403(d) and (e).

While appellant does not contest that the individual appellees were public officials, we note that they meet the common law test for public officials. *See Bradshaw v. Prince George's County, supra; see generally,* Annapolis City Code, Art. V. to VIII. While *Bradshaw* involved a police officer, persons in the position of the individual appellees in this case also meet the requisite elements. As public officials, the individual

appellees are entitled to common law immunity, with respect to *unintentional torts,* if they acted within the scope of the employment and without actual malice.

The evidence is uncontradicted that they were acting within the scope of their employment, and there is no legally sufficient evidence of actual malice. To defeat a motion for summary judgment in this context, Md.Rule 2–501 requires that appellant provide the court with facts that would be admissible in evidence to support the allegation that Mayor Hopkins, Chief Sherlock, Chief Smith, or Sgt. Malm acted with actual malice. *See* Md.Rules 2–501(b) and (c). Appellant was unable to produce any admissible evidence to go beyond the mere assertion. While appellant does assert that Karen D., the witness who recanted her testimony at the December hearing, stated that she was somehow pressured into implicating appellant in the scandal, appellant could provide no admissible evidence to support this allegation. In support of his contention that malice is not an issue to be determined on summary judgment, appellant points to *Clea v. Baltimore,* 312 Md. 662, 677, 541 A.2d 1303 (1988), wherein the Court of Appeals stated that "summary judgment is inappropriate where motive or intent are at issue since inferences must be resolved against the moving party." *Clea,* 312 Md. at 677, 541 A.2d 1303. While the existence of actual malice may be inferred from the circumstances of the case, appellant has the burden to provide legally sufficient evidence to permit such an inference. *Clea,* 312 Md. at 676, 541 A.2d 1303. Because appellant failed to provide such evidence, the trial court was legally correct in granting summary judgment on this issue. The common law immunity of the individual appellees is preserved by the LGTCA. *See* CJ § 5–403(d).[9]

---

**9.** That section provides:

> *Defenses not waived.*—Notwithstanding the provisions of subsection (b) of this section, this subtitle does not waive any common law or statutory defense or immunity in existence as of June 30, 1987, and possessed by an employee of a local government.

■ Because the individual appellees are "employees" and "officials" within the meaning of the LGTCA and municipal official statute, respectively, and Annapolis is a local governmental entity as defined in both statutes, the LGTCA and CJ § 5–321 apply to the facts of this case. If the individual appellees were mere employees and not public officials, Annapolis would not be immune because the city could not assert this defense under CJ 5–403(e).[10] Because the individuals are public officials and are entitled to assert common law public official immunity, Annapolis is immune under the LGTCA, § 5–403(e). We explain.

In *Bradshaw, supra,* the Court of Appeals interpreted Prince George's County's Charter as not waiving immunity of the County for the acts of agents performed within their authority, even if the agents were immune as public officials. This decision was reversed in *James, supra,* wherein the Court stated that the County was liable whether or not the agent had public official immunity. In other words, the Court held that, if the County chose to waive governmental immunity under its charter, it was responsible under *respondeat superior* for the torts of employees that occurred in the course of employment, even if the employees were immune. The same reasoning was followed in *Cox, supra.*

In our view, the rationale of the *James* decision in 1980 and the *Cox* decision in 1983 was subsequently nullified by statute. The LGTCA § 5–403(e) provides that under current law a local government may assert any common law or statutory defense or immunity in existence as of June 30, 1987, and possessed by the employee. The doctrine of public official immunity was in existence prior to that date, and thus, the

---

**10.** That section provides:

> *Defenses available to government.* A local government may assert on its own behalf any common law or statutory defense or immunity in existence as of June 30, 1987, and possessed by its employee for whose tortious act or omission the claim against the local government is premised and a local government may only be held liable to the extent that a judgment could have been rendered against such an employee under this subtitle.

City of Annapolis is immune from suit for the unintentional torts.[11]

### The Applicability of the Statutes to Defamation and Invasion of Privacy

The second issue we must resolve is whether public official immunity applies to "intentional torts," as characterized by appellant. The torts of defamation and invasion of privacy are sometimes referred to as intentional torts in that they may rest on an intentional act. In the case before us, the question of whether there is sufficient evidence to go to the jury with respect to these torts hinges on whether there is sufficient evidence to satisfy the element of publication. In that regard, appellant makes two arguments: (1) the statements made at the press conference constituted publication because a reasonable inference could be drawn that the statements made by Mayor Hopkins referred to appellant, among others, and (2) because at the time the press obtained knowledge of appellant's name the individual appellees were the only persons in possession of that knowledge, a reasonable inference can be drawn that one or more of the appellees must have provided that information to the press.

Assuming, *arguendo*, that the facts asserted by appellant provide a reasonable basis for an inference of publication, the facts can only support an inferential finding of negligence, not intent. The only permissible inference supported by the facts of this case would be that one of the appellees, in some fashion, negligently permitted the information to be discovered or negligently made a statement without intending it to refer to appellant. There is no basis on this record for a permissible inference that an appellee intentionally published information concerning the appellant. The latter inference would be pure speculation. See *Shapiro v. Massengill*, 105

---

**11.** Arguably, the section could be read in a more limited fashion as referring only to immunities arising from actual events that occurred prior to June 30, 1987. This would fly in the face of the general provision, however, that the entire act only applies to events occurring on and after July 1, 1987.

Md.App. 743, 772–774, 661 A.2d 202 (1995). Consequently, even in the absence of immunity from intentional torts based on a deliberate or unconstitutional act, in our view, there is immunity when the tort necessarily is based on negligence.[12]

Pursuant to CJ § 5–403(e) and common law public official immunity, Annapolis enjoys immunity by asserting the common law immunity of its officials. Even though common law immunity is not applicable to intentional torts, it is available when a tort, sometimes intentional, is necessarily based on negligence on the facts of a particular case such as the one before us.[13] We, therefore, hold that the trial court committed no error in granting appellees' motion for summary judgment.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.

---

**12.** Pursuant to the terms of the LGTCA and its interpretation by the Court of Appeals in *Ashton v. Brown*, 339 Md. at 108, 660 A.2d 447, the terms of CJ § 5–321, and our interpretation of it in *Davis v. DiPino, supra*, both statutes apply to intentional torts. Assuming, *arguendo*, intentional acts and, thus, no common law immunity, if we ended our analysis with the LGTCA, we would have to hold that the LGTCA does not constitute a bar to suit against the individual appellees because the LGTCA provides that a plaintiff may not execute a judgment against an employee of a local government, as distinguished from constituting a bar to the suit. The LGTCA does not provide immunity to the local government. Consequently, even though the LGTCA makes no distinction between unintentional and intentional torts and applies to both, it is not a bar. See CJ § 5–402(b). On the other hand, CJ § 5–321 does provide a bar in the form of immunity from intentional torts with respect to the individual appellees, but it does not provide immunity to the City of Annapolis.

**13.** The parties herein do not always clearly distinguish between immunity and privilege. There are certain qualified or conditional privileges at common law that may be applicable with respect to intentional torts if justified by the facts in a particular case. For example, the reason for an employee's discharge may be privileged, but that privilege is defeated if statements are made in reckless disregard of the truth, not made in furtherance of the interests for which the privilege exists or communicated to a third person other than one justifiably entitled to receive it. The existence of that privilege does not answer the inquiries in this case because the challenged communication was not one made to another in the course of the investigation but, rather, was allegedly made to the press and not in furtherance of the investigation. *Leese v. Baltimore County, supra.*