## Ammon Cate vs. Louis A. Schaum.

*Unlawful Entry on a Tenant's Premises by a Landlord or his Bailiff—Liability of a Landlord in Trespass for the Wrongful Execution of a Distress Warrant by his Bailiff— The Measure of Damages.*

Neither a landlord nor his bailiff, in order to make a distress of a tenant's goods, lawfully can break open gates or break down inclosures or force open the outer door of any dwelling house or other building, or enter by a window which is found shut, though not fastened; but it seems the landlord or his bailiff may open the outer door by the usual means adopted by persons having access to the building, and therefore he may open it by turning the key, by lifting the latch, or by drawing back the bolt.

The unlawful entry upon the premises by a landlord or his bailiff to make a distress, will render the seizure of the goods altogether void, and the party making it a trespasser *ab initio*.

Where a distress warrant clothes a bailiff with authority to enter premises to make a distress, and wrong is done in the manner of executing the warrant, the general principle applies, that the master is responsible for the wrongful acts of his servant, even though they be wilful or reckless, if the act done by the servant be within the scope of his employment, and in furtherance of his master's business.

Where a landlord can be treated as a trespasser *ab initio*, on account of a trespass committed by his bailiff in breaking and entering his tenant's dwelling house and making an illegal distress of the goods found therein, so as to make his possession of the goods wholly wrongful, their entire value will be recoverable in an action of trespass.

APPEAL from the Court of Common Pleas.

The appellant, Cate, was the landlord, and Schaum, the appellee, was the tenant of a house and premises situated in the City of Baltimore, and the tenant was, on the 20th April, 1877, three months in arrear with his rent. Hogg,

the general agent of the appellant to collect his rents, on the 26th April, 1877, by the authority of his principal, Cate, went before a justice of the peace, swore out a distraint warrant against the goods of the tenant, and then left the warrant with the justice to be delivered to the bailiff, Abbes, to be served, without however, any instructions other than to serve it. The warrant was served in a manner, and the goods taken away and sold under circumstances. which the tenant considered unlawful. Hence he, on the 6th June, 1877, brought his suit in trespass *de bonis asportatis;* the declaration being for forcible entry of the premises, and conversion of the goods. The case is further stated in the opinion of the Court.

*Exceptions.*—At the trial the plaintiff offered the following prayers:

1. If the jury find that the witness, Hogg, was the agent of the defendant, for the purpose of issuing the distress warrant shown in evidence in this cause, and that the witness, Abbes, was authorized by him to distrain on the property of the plaintiff, in the premises, No. 388 East Monument street, for rent due to the defendant for said premises, and that in order to make the distraint, said Abbes entered said premises, when they were in the control and possession of the plaintiff, under a lease to him from the defendant, and seized and carried away the goods mentioned in evidence; and if the jury find that the premises were closed and fastened at the time, and that Abbes effected an entrance by raising with a piece of hoop iron, the hook of the gate, which was fastened on the inside to a staple, and that such was not the. ordinary means of opening the gate from the outside, then the said entry was unlawful, and the jury must find for the plaintiff.

2. If the jury find from the evidence, that the witness, Abbes, was duly authorized to distrain on the property of the plaintiff, in the. premises, No. 388 East Monument

street, for rent due to the defendant, and in pursuance of said authority, entered the said premises when they were in the control of the plaintiff, under a lease to him from the defendant, and seized and carried away the property of the plaintiff, mentioned in the evidence; and if the jury find that the premises were closed and fastened at the time, and that Abbes effected an entrance by opening the shutter, or lifting the sash of a window which was closed and fastened, then the said entry was unlawful, and the jury must find for the plaintiff.

3. If the jury find for the plaintiff, their verdict must be for a sum equal to the value of the property taken away, together with a sum as damages, equal to the legal interest thereon, from the time of the seizure up to the time of this trial, if they see fit to give such sum, and in addition thereto, may allow such a sum as will compensate the plaintiff for the injury to his character, feelings and reputation, arising from the unlawful act mentioned in the plaintiff's first prayer, if they shall find such unlawful act; and the jury are authorized to consider for this purpose, the situation of the plaintiff, all acts of reckless disregard and indifference to his rights, committed in entering said premises and carrying away the said goods, if they shall find any such acts, and generally all the circumstances given in evidence and surrounding the case.

4. If the jury find for the plaintiff, their verdict must be for damages in a sum equal to the value of the property taken away, together with damages for the detention of the property, equal to the legal interest thereon, from the time of seizure up to the date of this trial, if they shall see fit to give such sum.

And the defendant offered the following prayers:

1. That although the jury may believe from the testimony, that the plaintiff was, on the 20th April, 1877, indebted to the defendant for rent, as stated in the bill annexed to the warrant of distress offered in evidence;

that the warrant was issued by the authority of the defendant, as testified to by the witness, Hogg; that F. A. Abbes, bailiff, named in the warrant, went upon the demised premises (house,) and levied the distress upon the goods found in the premises, (house,) took them away, housed, appraised, advertised and sold them for the amount of money testified to by him; that though they may believe the goods were at the time, the property of the plaintiff, and worth the amount of money testified to by him; and though the jury may further believe from the testimony, that the bailiff, Abbes, in going upon the premises (house,) to levy upon the goods as above stated, did, with force, break and enter the premises (house,) by lifting and passing through a rear window of the house, as testified to by the plaintiff's witnesses, Peacock and wife, yet their verdict must be for the defendant.

2. That there is nothing contained in the warrant of distress itself, whereby the bailiff, Abbes, was clothed with authority to break and enter the plaintiff's house, as testified to by the witnesses, Peacock and wife.

3. That there is nothing contained in the warrant of distress itself, whereby the bailiff, Abbes, was clothed with authority from the defendant to break and enter the plaintiff's house, as testified to by the witnesses, Peacock and wife.

4. That as a matter of law, a warrant of distress like that in evidence here, does not authorize the bailiff therein named to forcibly enter the tenant's house.

5. That the defendant did not by his acts, in executing and delivering the warrant of distress in this case to the bailiff, Abbes, without any other instructions than those contained in the warrant, authorize the bailiff to break and enter the plaintiff's house, as testified to by his witnesses, William Peacock and wife.

6. That even if the jury shall believe that the said Abbes and Harris forcibly entered the house of the plain-

tiff, as testified to by the witnesses, Peacock and wife; and shall further believe that the entry was made without the authority, knowledge or assent of the defendant, and that the defendant did not afterwards affirm or approve of the entry, or assent thereto, then their verdict must be for the defendant.

The Court, (GAREY, J.,) granted the plaintiff's first, second and fourth prayers, and rejected the plaintiff's third prayer, and all the prayers of the defendant. The jury found for the plaintiff in damages to the amount of $300, judgment was entered accordingly, and the defendant appealed.

The cause was argued before BARTOL, C. J., BOWIE, BRENT, MILLER and ALVEY, J.

*Henry A. James* and *Luther M. Reynolds,* for the appellant.

The appellant contends, that even where the relation of master and servant (principal and agent) is admitted, there is, for the purpose of ascertaining the liability of the master, a well-recognized distinction in law between injuries resulting from the negligence or inefficiency of the servant, and injuries resulting from his wilful trespass.

"Evidence of a wilful trespass by the servant will not show that the master is a trespasser, without express evidence that the act was done by his sanction, for an authority to commit a trespass cannot be implied." *Starkie on Evidence,* 34; 1 *Chitty Pl.,* 91, 202. (*Perkins' Ed.* 1876;) *Addison on Torts,* 31; *Lyons vs. Martin,* 8 *Ad. & El.,* 512; *Freeman vs. Rosher,* 13 *Q. B.,* 778; *Lewis vs. Read,* 13 *M. & W.,* 834.

"The master, as such, is not liable for the trespass of his servant, unless the particular wrongful act of the servant was ordered by the master, or in other words, unless the master be the immediate cause of the injury." *Judge*

*Strong in Yerger vs. Warren,* 31 *Pa. St.,* 319 ; *McCoy vs. McKowen,* 26 *Miss.,* 487 ; *Vanderbilt vs. Richmond Turn- pike Co.,* 2 *N. Y.,* 479 ; *Thames S. S. Co. vs. Housatonic R. R.,* 24 *Conn.,* 40 ; *Church vs. Mansfield,* 20 *Conn.,* 284.

The philosophical occasion for this exception from the general rule—of the liability of the master to third persons—suggests itself at once. While an agent is, in general, in the eyes of the law, merely an instrument without will of his own, yet, in order to avoid the injustice which would result from the unintelligent application of a rigid theory, the law will at times take notice of the fact that the agent is a free-acting being, subject to impulses entirely without both the knowledge and the control of his employer.

The knowledge of the proper manner of executing a distress is within the peculiar line of the bailiff's experience, not in the landlord's ; and it would be repugnant, as well to the theory of the law as to reason, to hold one accountable for knowledge which he is forbidden by law to acquire by experience. Accordingly, a disposition to excuse the landlord from liability for the unauthorized acts of his bailiff in levying distress, appears strongly in judicial decisions, the weight and soundness of which will hardly be questioned. *Lewis vs. Read,* 13 *M. & W.,* 834 ; *Freeman vs. Bosher,* 13 *Q. B.,* 778 ; *Becker vs. Dupree,* 75 *Ill.,* 167 ; *Grund vs. Van Vleck,* 69 *Ill.,* 478 ; *Becker vs. Dupree,* 75 *Ill.,* 167 ; *Robinson vs. Webb,* 11 *Bush.,* (*Ky.,*) 464 ; *Woodfall—Landlord and Tenant—*395 ; 1 *Waterman on Trespass,* 27, 52, 66.

*John Scott, Jr.,* and *James A. L. McClure,* for the appellee.

The position of the defendant—that he is not answerable for the forcible entry of his bailiff, since he neither previously authorized nor subsequently sanctioned it—is untenable. He is responsible for all his acts done in the

line of his employment, as he alone started him in action. The relation is that of principal and agent. *Attack vs. Bramwell*, 32 *Law Journal, N. S., Queen's Bench*, 146, or 3 *Best & Smith*, 520; *Sherman vs. Dutch*, 16 *Ills.*, 285; *Asbell vs. Tipton, &c.,* 1 *B. Monroe, (Ky.,)* 300, 303; *Brown vs. Glenn,* 71 *Eng. C. L.,* 254; *Dent vs. Hancock,* 5 *Gill*, 120; *Wood's Master and Servant, secs.* 282, 283, 287, 308, 309, and authorities cited; *Smith's Master and Servant,* (3rd *Ed.,*) 260–1; 1 *Waterman on Trespass, sec.* 49; 94 *Eng. C. L.,* 530.

The first prayer is correct. If the jury believed the facts set forth in the prayer, then the entrance of the bailiff upon the premises of the plaintiff, in the manner set forth in the prayer, was an unlawful entrance. *Woodfall's Landlord and Tenant,* (10th *Ed.,*) 414, 415; *Taylor's Landlord and Tenant, secs.* 578, 768.

The second prayer is correct. *Hancock vs. Austin,* 32 *L. J., C. P.,* 252; *Nash vs. Lucas, Law Reports,* 2 *Queen's Bench,* 590; *Attack vs. Bramwell,* 32 *L. J., Q. B.,* 146; 6 *Robinson's Practice,* 738.

The fourth prayer ought not to be ground of complaint on the part of the appellant. It was surely advantageous to him, as the plaintiff was entitled to the larger rule of damages. *Attack vs. Bramwell,* 32 *L. J., Q. B.,* 146, or 3 *Best & Smith,* 520; *Moore vs. Schultz,* 31 *Md.,* 418; *Conrad vs. Pacific Ins. Co.,* 6 *Peters,* 272, 273, 275, 281; *Addison on Torts,* (3rd *Ed.,*) 299, 300; *Meagher vs. Driscoll,* 99 *Mass.,* 281–285; *Sherman vs. Dutch,* 16 *Ills.,* 286; *Johnson vs. Courts,* 3 *H. & McH.,* 510; *The Amiable Nancy,* 3 *Wheat.,* 546, or 4 *Wheaton's Condensed Reports,* 322, 327.

It will be seen, by consulting the authorities relied on by the appellant, that the landlord was not held liable in them for the unlawful acts of his agent, broker or bailiff, for the reason that his agent, broker or bailiff outran his authority. In other words, the unlawful act was outside of the line of his employment.

The distinction between a sheriff, in his relation to an execution-creditor and a bailiff in his relation to a landlord, is a plain one, and well recognized in the books.

The sheriff acts by virtue of process as a ministerial officer of the law, and not as the agent of the execution-creditor; whilst the bailiff acts purely as the agent of the landlord. *Woodfall's Landlord and Tenant,* 373, (*10th Ed.*)

" A distinction may be reasonably made between the powers of an officer, acting in execution of legal process, and the powers of a private individual who takes the law into his hands and for his own purposes.   There is another well known distinction—that a landlord cannot distrain at all hours, whilst a sheriff can.   6 *Robinson's Practice,* 738 ; *Brown vs. Glenn,* 71 *Eng. Com. Law,* 254 ; *Sherman vs. Dutch,* 16 *Ill.,* 285.

ALVEY, J., delivered the opinion of the Court.

This is an action of trespass for breaking and entering the plaintiff's dwelling house, and making an illegal distress of goods found therein.

The record presents two questions: 1. Whether the defendant as landlord is liable for the act of his bailiff in forcibly and illegally breaking and entering the premises of the plaintiff to execute a distress warrant, without special instructions as to the manner of executing such warrant? and 2. If the defendant be liable, to what measure of damages is the plaintiff entitled ?

1. The fact is not controverted that the agent of the defendant making the affidavit of the amount of rent due, and issuing the warrant of distress to the bailiff, was duly authorized so to act for the defendant.   The bailiff receiving the warrant, therefore, was amply clothed with authority from the defendant to make the distress.   But it is contended on behalf of the defendant, that, in the absence of special instructions or authority as to the manner of his proceeding, the bailiff was only authorized to

act in a regular and legal manner in executing the warrant, and for any force or illegality committed by the bailiff the defendant is not responsible. It is not denied that the bailiff acted illegally in making the distress. It appears, according to his own testimony, that finding he could not get admission to the house by the front door, he went around and entered the rear yard of the house, through a gate that was fastened on the inside with a hook and staple, opening the gate by raising the hook with a piece of iron which he inserted through a crack in the gate. By other testimony it was proved that, after getting into the back yard, he forced an entrance into the house through a window which he found closed. And the defendant, assuming this to be the true state of the case, prayed the Court to instruct the jury that he was not liable for the entry so made by the bailiff; but the Court refused to grant the instruction, and we think properly.

From an early time it has been settled that neither the landlord nor his bailiff, in order to make distress of the tenant's goods, can lawfully break open gates, or break down inclosures, or force open the outer door of any dwelling house or other building, or enter by a window which is found shut though not fastened; but it seems the landlord or his bailiff may open the outer door by the usual means adopted by persons having access to the building, and therefore he may open it by turning the key, by lifting the latch, or by drawing back the bolt. *Co. Litt.*, 161 *a ; Poole vs. Longueville*, 2 *Wms. Saund.*, 284 *c, note* 2; *Dent vs. Hancock*, 5 *Gill*, 120; *Ryan vs. Shilcock*, 7 *Exch.*, 72; *Brown vs. Glenn*, 16 *Q. B.*, 254; *Attack vs. Bramwell*, 3 *B. & S.*, 520; *Nash vs. Lucas*, *L. R.*, 2 *Q. B.*, 590. And it is clearly established, as it will abundantly appear from the authorities just cited, that the unlawful entry upon the premises by the landlord or his bailiff to make the distress will render the seizure of the goods altogether void, and the party making it a trespasser *ab initio*.

These principles have not been controverted by the defendant, and they could not be, but, as we have before stated, he denies that he can, under the circumstances of this case, be made liable for the illegal acts of the bailiff to whom the distress warrant was directed. And he relies upon authorities which hold, as in the case of *Lyons vs. Martin*, 8 *Ad. & Ell.*, 512, that if a servant, authorized merely to distrain cattle *damage-feasant*, should drive cattle from the highway into his master's close, and there distrain them, the master would not be liable for the wrongful act of the servant. Or, as in the case of *Lewis vs. Read*, 13 *M. & W.*, 834, where a landlord authorizes his bailiff to distrain for rent due him from his tenant of a farm, giving special directions that nothing should be taken except it be found on the demised premises, but the bailiff distrains cattle of another person (supposing them to belong to the tenant) beyond the boundary of the farm, and the cattle are sold, and the landlord receives the proceeds of sale, the landlord would not be liable in trover for the value of the cattle, unless it were found by the jury that he ratified the act of the bailiff with knowledge of the trespass, or that he chose, without inquiry, to take all risk upon himself. But those cases, and others relied on of analogous character, are quite distinguishable from the present case. There the tortious acts of the servant or bailiff were not within the scope of the authority delegated by the principal. But here the distress warrant clothed the bailiff with authority to enter the premises to make the distress, and the wrong done was in the manner of executing the authority. And in such case, the general principle applies, that the master is responsible for the wrongful acts of his servant, even though they be wilful, or reckless, if the act done by the servant be within the scope of his employment, and in furtherance of his master's business. *Huzzey vs. Field*, 2 *Cr. M. & R.*, 432, 440; *Higgins vs. The Watervliet Turnpike & R. Co.*, 46 *N. Y.*,

Cate *vs.* Schaum.

23; *Rounds vs. The Del. Lackawanna & West. R. Co.*, 64 *N. Y.*, 129; *Ramsden vs. Boston & Albany R. Co.*, 104 *Mass.*, 117; *B. & O. R. Co. vs. Blocher*, 27 *Md.*, 277. Indeed, the authorities are numerous to show, that a master is liable for the illegal acts of his servant done by force or in wantonness, while in the performance of an act within the scope or course of his employment. As, for instance, where the guard of the defendant's omnibus, in removing a passenger from the omnibus, whom he supposed to be drunk, and who refused to pay his fare, forcibly dragged him out, and threw him upon the ground, whereby the passenger was seriously injured, it was held in the Exch. Chamber, affirming the judgment of the Court of Exch., that the master was liable. *Seymour vs. Greenwood*, 7 *H. & N.*, 355. To the same effect, and in support of the same general proposition, is the case of *Limpus vs. Lon. General Omnibus Co.*, 1 *H. & Colt*, 526, also decided in the Exch. Chamber, where the subject is elaborately and carefully considered.

But, without referring to other authorities in support of the general principle already stated, the very point here in controversy is fully embraced by the decision of the well considered case of *Attack vs. Bramwell*, 3 *Best & S.*, 520. There the defendant was the landlord of the plaintiff, and there being rent due, distress was made by the defendant's bailiff, who for the purpose of making the distress, effected his entry into the house of the defendant by forcibly breaking in a window, and then seized the goods, there found, and afterwards sold them. And it was held that the entry was unlawful, and that such unlawful entry rendered the defendant a trespasser *ab initio*. Mr. Justice BLACKBURN, before whom the case was tried at the sittings, and who concurred with the other Judges of the Queen's Bench in the opinion and judgment upon the rules for a new trial, briefly states the case, and the principle of the decision, so far as it affects

the question involved in the case now under considera-
tion.   He said: "Here the defendant's bailiff entered the
plaintiff's premises and distrained his goods, and the dis-
tress was made by getting in at a fastened window, which
he had no right to do.   Breaking the house and entering it
in that way caused the distress to be altogether void, and
the landlord a trespasser *ab initio;* for there is a marked
distinction between a distress being illegal from the begin-
ning and becoming so by matter subsequent.   The 11 *G.
2, C.* 19, *sec.* 19, is carefully worded,—'where any distress
shall be made for any kind of rent justly due, and any
irregularity or unlawful act shall be *afterwards* done
by the party or parties distraining, or by his, her, or
their agents, the distress itself shall not be deemed to be
unlawful, nor the party or parties making it be deemed
a trespasser or trespassers *ab initio.'*   When, therefore,
a party is a trespasser *ab initio* the statute does not
apply, and the matter remains as at common law.   Here
the defendant having broken the plaintiff's house, was a
trespasser at common law, and had no defence against
an action of trespass for taking his goods."

Entertaining no doubt of the liability of the defendant
for the acts of his bailiff under the distress warrant, we
think the Court below was entirely right in rejecting all
the prayers offered by the defendant; and we think the
jury were properly instructed by the granting of the first
and second prayers offered by the plaintiff.

2. It only remains to determine whether there was
error in granting the fourth prayer of the plaintiff, which
relates to the measure of damages.   By that prayer, the
jury were instructed that if they found for the plaintiff, he
was entitled to recover the full value of the goods taken,
with interest thereon, if they should think proper to allow
such interest.   And it would seem that this instruction
was as favorable to the defendant as he could possibly ask.
Indeed, we do not understand that this instruction is

seriously complained of by the defendant. The rule seems to be well established by authority, that where the defendant can be treated as a trespasser *ab initio*, so as to make his possession of the goods wholly wrongful, their entire value will be recoverable. This was the rule applied in the case of *Keen vs. Priest*, 4 *H. & N.*, 236, an action for illegal distress, and also in the case of *Attack vs. Bramwell, supra;* and it is so laid down as the settled law in *Mayne on Damages, marginal pages*, 230 *and* 234.

It follows that the judgment must be affirmed.

*Judgment affirmed.*