706 A.2d 659

William L. TALL, as Parent and Next
Friend of William L. Tall, Jr.

v.

BOARD OF SCHOOL COMMISSIONERS
OF BALTIMORE CITY.

No. 1102, Sept. Term, 1997.

Court of Special Appeals of Maryland.

March 4, 1998.

**238**

Jonathon P. Kagan (Mary C. Baldwin and Brassel & Baldwin, P.A., on the brief), Annapolis, for appellant.

William R. Phelan, Jr., Principal Counsel (Frank C. Derr, Deputy City Solicitor and Sandra Holmes, Assistant Solicitor, on the brief), Baltimore, for appellee.

Argued before HOLLANDER, THIEME and KENNEY, JJ.

HOLLANDER, Judge.

In an amended complaint filed in the Circuit Court for Baltimore City, William L. Tall, as parent and next friend of William L. Tall, Jr. ("Roy"), appellant, sued the Board of School Commissioners of Baltimore City (the "Board"), appellee, and Robert Manning [1] for negligence (Count I), assault (Count II), battery (Count III), intentional infliction of emotional distress (Count IV), and violations of the Maryland Declaration of Rights (Count V). Appellee filed a motion to dismiss and, following a hearing, the court granted the motion. After the court granted appellant's motion for final judgment, Tall noted his timely appeal. He presents one question for our review, which we have rephrased slightly:

Did the trial court err in granting appellee's motion to dismiss?

For the reasons set forth below, we shall affirm.

## FACTUAL SUMMARY

Appellant's son, Roy, suffers from Down's syndrome. During the summer of 1995, when Roy was nine years old, he participated in a special educational program at School No. 304, Harbor View Elementary, sponsored by the Board. During the course of the program, Manning, who was an employee of the Board, served as Roy's teacher.

While at school on July 18, 1995, Roy urinated in his pants. Manning responded by physically disciplining Roy; this included beating the child on his arms and legs with a ruler. When Roy arrived home that day, Gwyneth Tall, his mother, noticed that he was wearing a long-sleeved shirt and long

---

1. Initially, appellant filed a complaint against the Board and Manning, as well as the City of Baltimore, Dr. Walter Amprey, (the Superintendent of Baltimore City Public Schools), and Barbara Avery–Anderson (the Principal of Harbor View Elementary School). Thereafter, the City, Dr. Amprey, Ms. Avery–Anderson, and appellee filed motions to dismiss. Prior to the resolution of the motions, appellant filed his First Amended Complaint against the Board and Manning only; appellant voluntarily dismissed defendants Amprey, the City, and Ms. Avery–Anderson.

pants, which were different than the clothes he had worn to school that morning. As she helped Roy change his clothes, Ms. Tall discovered raised welts and bruises on her son's arms and legs. Consequently, she took Roy to the emergency room at Harbor Hospital Center, where Roy was x-rayed and treated for his injuries.

Later that same day, the Talls reported the injuries to the Baltimore City Police, at the Southern District. An investigation of the matter culminated in criminal charges against Manning for child abuse, assault, and battery. Subsequently, Manning pled guilty to assault, for which he received a five year suspended sentence and five years of supervised probation. He was also ordered not to engage in any activity as a teacher or supervisor of any individual under the age of twenty-one.

On January 31, 1997, appellee filed a Motion to Dismiss First Amended Complaint. Attached to the motion was a copy of Maryland Code (1978, 1992 Repl.Vol., 1996 Supp.), § 7–305 of the Education Article ("E.A."). Section 7–305(a)[2] provided:

(a) *Corporal punishment prohibited.*-Notwithstanding any bylaw, rule, or regulation made or approved by the State Board, a principal, vice-principal, or other employee may not administer corporal punishment to discipline a student in a public school in the State.

Appellee also attached to the motion a copy of the "RULES OF THE BOARD OF SCHOOL COMMISSIONERS OF BALTIMORE CITY" (the "local rules"). Section 506.04 of the local rules provided:

506.04–Corporal Punishment Prohibited

The schools shall be governed without corporal punishment.

Additionally, appellee appended a document entitled *"Informational Guide for Parents and Students, Fall 1996"* (the

---

**2.** Effective April 9, 1996, E.A. § 7–305 was renumbered as E.A. § 7–306. 1996 Md. Laws, ch. 10.

"Supplement"), which contained a section entitled "Corporal Punishment." It stated:

Corporal punishment usually happens when a teacher, principal, or other school employee hits students as a way of disciplining them.

Corporal punishment is any deliberate striking, paddling, application of an object or body part against the body of a student, or any other physical punishment used as a corrective or retaliatory measure against a student.

**In the Baltimore City Public Schools, corporal punishment is forbidden** (*Rules of the Board of School Commissioners, 506.04* ).

There are circumstances and/or conditions under which [Baltimore City Public School] employees are permitted to touch students appropriately. Maintaining a safe and orderly school environment, administering first aid, and attending to health needs are categories of these circumstances and/or conditions where touching students is permitted. Typical examples of these circumstances are as follows:

- Intervening in fights
- Preventing accidental injury
- Protecting oneself
- Providing appropriate care to disabled students
- Moving through a crowd to address an emergency
- Employing passive restraint with students with emotional disabilities

(Italics in original; boldface added).

Thereafter, the circuit court (Dancy, J.) conducted a hearing on the Board's motion to dismiss and, by order dated February 18, 1997, granted appellee's motion. Judge Dancy handwrote the following on the Order:

The Complaint fails to state a cause of action as the conduct of the Board's employee complained of is malicious and intentional and is outside the scope of his employment and not in furtherance of the Board's business of educating

students. This is particularly so as this employee was a teacher specifically instructed not to use corporal punishment.

Manning subsequently filed his answer to the amended complaint. Pursuant to Maryland Rule 2–602(b), the court granted appellant's motion for final judgment with respect to the disposition of the claims asserted against appellee.

We will include additional facts in our discussion.

## DISCUSSION

### I.

As a threshold matter, we must determine whether the trial court properly directed the entry of a final judgment. Absent a proper final order, of course, we have no jurisdiction to entertain this appeal, because the court's ruling did not dispose of the case as to both parties.

In a case involving multiple parties, Maryland Rule 2–602(b) permits a court to enter final judgment as to a particular party so long as "the court expressly determines in a written order that there is no just reason for delay." Here, appellant filed a motion pursuant to Maryland Rule 2–602(b) stating, *inter alia,* that there was no just reason for delay with respect to the claims against the Board. The court's written order granting appellant's "Motion For Final Judgment" stated:

Upon consideration of [appellant's] Motion for Final Judgment, any responses and replies filed thereto, it is ... ORDERED:

1. That [appellant's] Motion for a Final Judgment is GRANTED;

2. That Final Judgment is entered with regard to Defendant Board of School Commissioners of Baltimore City as it relates to the Court's Order dated February 18, 1997 dismissing [appellant's] claim against [the Board] for failure to state a claim upon which relief can be granted.

■ It is clear that the court failed to comply with Rule 2–602(b), because it did not make an express determination in the written order that there was "no just reason for delay." Consequently, the court's order granting final judgment was ineffective, and there is no final appealable judgment in favor of the Board. *Waters v. USF & G*, 328 Md. 700, 707–09, 616 A.2d 884 (1992); *see Gindes v. Khan*, 346 Md. 143, 150–51, 695 A.2d 163 (1997). This flaw does not necessarily conclude the matter, however.

Maryland Rule 8–602(e)(1) provides:

If the appellate court determines that the order from which the appeal is taken was not a final judgment when the notice of appeal was filed but that the lower court had discretion to direct the entry of a final judgment pursuant to Rule 2–602(b), the appellate court may, as it finds appropriate, (A) dismiss the appeal, (B) remand the case for the lower court to decide whether to direct the entry of a final judgment, (C) *enter a final judgment on its own initiative* or (D) if a final judgment was entered by the lower court after the notice of appeal was filed, treat the notice of appeal as if filed on the same day as, but after, the entry of the judgment.

(Emphasis added).

■ To be sure, certification under Rule 2–602(b) "should be used sparingly so that piecemeal appeals and duplication of efforts and costs in cases involving multiple claims or multiple parties may be avoided." *Maryland–Nat'l Capital Park & Planning Comm'n v. Smith*, 333 Md. 3, 7, 633 A.2d 855 (1993); *see Huber v. Nationwide Mut. Ins. Co.*, 347 Md. 415, 423, 701 A.2d 415 (1997). Nevertheless, the trial court certainly had discretion to enter a final judgment pursuant to Rule 2–602(b). Moreover, the court clearly intended to do so, and "would have accomplished such purpose if it had made the requisite written determination" that there was no just reason for delay. *Waters*, 328 Md. at 709, 616 A.2d 884. Accordingly, pursuant to Md. Rule 8–602(e)(1)(C), we shall, in the exercise of our discretion, "enter a final judgment on our own initiative, treat

the notice of appeal as properly filed, and proceed with the case." *Waters,* 328 Md. at 709–10, 616 A.2d 884; *see Shofer v. Hack Co.,* 324 Md. 92, 98, 595 A.2d 1078 (1991), *cert. denied,* 502 U.S. 1096, 112 S.Ct. 1174, 117 L.Ed.2d 419 (1992); *Kamin–A–Kalaw v. Dulic,* 322 Md. 49, 54, 585 A.2d 216 (1991); *Quartertime Video v. Hanna,* 321 Md. 59, 63 n. 4, 580 A.2d 1073 (1990); *Seat Pleasant Baptist Church Bd. of Trustees v. Long,* 114 Md.App. 660, 674, 691 A.2d 721 (1997).

## II.

We next address appellant's contention that the circuit court improperly considered the local rules and the Supplement that appellee appended as an exhibit to its motion to dismiss. Appellant asserts that the court should not have considered the local rules and the Supplement because they were not supported by affidavit. Appellant's claim is not preserved. We explain.

■ A party must lay the proper foundation for a document that is attached to a motion. *See Diffendal v. Kash and Karry Serv. Corp.,* 74 Md.App. 170, 181, 536 A.2d 1175 (1988). In their treatise, Niemeyer and Schuett explain:

> A document can be made part of the motion only through affidavit, deposition, or answers to interrogatories that adequately lay the proper foundation for the document's admission into evidence. Authenticity and relevancy of the document must be shown. Attaching documents to a motion for summary judgment without the necessary affidavit is no more acceptable than standing up in open court and attempting to offer the same documents into evidence without a witness or a stipulation.

Paul V. Niemeyer & Linda M. Schuett, *Maryland Rules Commentary* 332 (2d ed.1992); *see Moura v. Randall,* 119 Md.App. 632, 641–42, 705 A.2d 334 (1998); *see also Hartford Accident and Indem. Co. v. Scarlett Harbor Assocs. Ltd.,* 109 Md.App. 217, 264, 674 A.2d 106 (1996) (stating that "a docu-

ment, otherwise admissible, may be used to show the existence of a factual dispute"), *aff'd*, 346 Md. 122, 695 A.2d 153 (1997).

Appellant complains that appellee failed to include an affidavit to support the documents. He asserts in his brief that he "objected to the court's consideration of the rules in his Memorandum in Opposition to Appellee's Motion to Dismiss." Our review of the record indicates, however, that appellant filed an opposition only in connection with appellee's motion to dismiss the *original* complaint; he never filed an opposition to the motion to dismiss the *amended* complaint. Moreover, in that opposition, he focused on the fact that appellee failed to attach the local rules and the Supplement, and that those documents were unsupported by affidavit. Thereafter, when appellee filed its motion to dismiss the amended complaint, it attached the local rules and the Supplement.

■ As noted, despite his original opposition, appellant then failed to file an opposition to the motion to dismiss the amended complaint. Moreover, at the hearing, appellant seems to have acquiesced to the court's apparent consideration of the local rules and the Supplement, because he failed to challenge the attachments. Nor did he dispute either the relevancy or the authenticity of the documents. Given appellant's failure to renew his objection "to the lack of the prerequisite foundation, the objection is waived." Niemeyer & Schuett, *supra*, at 332; *see* Md. Rule 8–131(a); *see also Geisz v. Greater Baltimore Medical Ctr.*, 313 Md. 301, 332, 545 A.2d 658 (1988).

■ We must next resolve whether the court's consideration of appellee's attachments altered the character of the motion. When, as here, a court considers extrinsic material in connection with a motion to dismiss, the motion to dismiss is ordinarily transformed into a motion for summary judgment. *Hrehorovich v. Harbor Hosp. Ctr., Inc.*, 93 Md.App. 772, 783, 614 A.2d 1021 (1992), *cert. denied*, 330 Md. 319, 624 A.2d 490 (1993); *see also* Md. Rule 2–322; *Pope v. Board of Sch. Comm'rs*, 106 Md.App. 578, 590, 665 A.2d 713 (1995), *cert. denied*, 342 Md. 116, 673 A.2d 707 (1996); Niemeyer &

Schuett, *supra,* at 333. In considering appellee's attachments, we are satisfied that the court "transmuted appellee['s] motion to dismiss to a motion for summary judgment." *Hrehorovich,* 93 Md.App. at 783, 614 A.2d 1021. Therefore, we shall review the matter accordingly.

### III.

Maryland Rule 2–501, which governs summary judgment, contemplates a two-level inquiry; it requires that, in order to grant summary judgment, the trial court must determine that no genuine dispute exists as to any material fact, and that one party is entitled to judgment as matter of law. *Bagwell v. Peninsula Regional Medical Ctr.,* 106 Md.App. 470, 488, 665 A.2d 297 (1995), *cert. denied,* 341 Md. 172, 669 A.2d 1360 (1996); *see also Southland Corp. v. Griffith,* 332 Md. 704, 712, 633 A.2d 84 (1993); *Beatty v. Trailmaster Prods., Inc.,* 330 Md. 726, 737, 625 A.2d 1005 (1993); *Sachs v. Regal Savings Bank, FSB,* 119 Md.App. 276, 277–78, 705 A.2d 1 (1998); *Bits "N" Bytes Computer Supplies, Inc. v. Chesapeake & Potomac Tel. Co.,* 97 Md.App. 557, 580–81, 631 A.2d 485 (1993), *cert. denied,* 333 Md. 385, 635 A.2d 425 (1994); *Seaboard Sur. Co. v. Richard F. Kline, Inc.,* 91 Md.App. 236, 242–45, 603 A.2d 1357 (1992). In its review of the motion, the court must consider the facts in the light most favorable to the non-moving party, *Dobbins v. Washington Suburban Sanitary Com'n,* 338 Md. 341, 345, 658 A.2d 675 (1995); *King v. Bankerd,* 303 Md. 98, 110–11, 492 A.2d 608 (1985), and construe all inferences reasonably drawn from those facts in favor of the non-movant. *Tennant v. Shoppers Food Warehouse Md. Corp.,* 115 Md.App. 381, 387, 693 A.2d 370 (1997); *Bagwell,* 106 Md.App. at 488, 665 A.2d 297.

To defeat a motion for summary judgment, the non-moving party must establish that a genuine dispute exists as to a material fact. *Moura,* 119 Md.App. at 639–40, 705 A.2d 334. A material fact is one that will somehow affect the outcome of the case. *King,* 303 Md. at 111, 492 A.2d 608. If a dispute exists as to a fact that is not material to the outcome of the case, the entry of summary judgment is not foreclosed.

*Scroggins v. Dahne,* 335 Md. 688, 691, 645 A.2d 1160 (1994). Moreover, mere formal denials or general allegations are not necessarily sufficient to prevent the entry of summary judgment. *Shaffer v. Lohr,* 264 Md. 397, 404, 287 A.2d 42 (1972); *Frush v. Brooks,* 204 Md. 315, 320–21, 104 A.2d 624 (1954).

In the absence of a genuine dispute as to material fact, we must decide if the trial court reached the correct legal conclusion. *Beatty,* 330 Md. at 737, 625 A.2d 1005; *see also Heat & Power Corp. v. Air Prods. & Chems., Inc.,* 320 Md. 584, 591, 578 A.2d 1202 (1990); *King,* 303 Md. at 111, 492 A.2d 608. Appellate courts ordinarily review the grant of summary judgment "only on the grounds relied upon by the trial court." *Blades v. Woods,* 338 Md. 475, 478, 659 A.2d 872 (1995); *see Hoffman v. United Iron and Metal Co., Inc.,* 108 Md.App. 117, 132–33, 671 A.2d 55 (1996).

With these principles in mind, we must determine whether there are any disputes of material fact. If not, we must then decide whether the trial court was legally correct in its decision.

Appellant alleged in his amended complaint that Manning was "an agent, servant, and/or employee of the School Board acting within the scope of his employment while he was teaching ... Roy...." His claims against the Board are all premised on the doctrine of *respondeat superior.*[3] Under this doctrine, the Board, as employer, cannot be liable for Manning's actions unless his conduct was within the scope of employment. Appellant argues that, merely because Manning's acts were intentional, this does not compel the conclusion that his conduct was beyond the scope of employment. Instead, appellant avers that he presented disputed questions of material fact that should have been resolved by the jury.

---

3. At the outset, we note that this case does not present an issue of negligent hiring. Nor is there any contention that the Board had prior knowledge of any assaultive behavior by Manning toward students. Therefore, we do not address whether the Board could be liable for such claims, and this opinion should not be construed to suggest that a school board could not be liable if it negligently hired a teacher or knowingly allowed an abusive teacher to remain in its employ.

He argues: "A school board may be held vicariously liable for such [intentional] acts and it should be left to the fact finder to determine whether or not the acts were committed within the scope of employment." Therefore, in his view, the circuit court erred in deciding, as a matter of law, that Manning's conduct was outside the scope of employment.

Appellant's argument is founded on the assertion that Manning's conduct was incidental to conduct authorized by the Board for educating special needs children, it was foreseeable, and it was in furtherance of appellee's objective of educating these children. According to appellant, Manning's physical contact with Roy was foreseeable because, as a result of Roy's disability, Manning was required to give him special attention, which included "clothing, touching, and cleaning" Roy. In addition, appellant observes that the Supplement "contemplate[d] that a teacher may touch a student to provide appropriate care for disabled students with emotional disabilities." Appellant states:

> It is a fair and reasonable inference that Defendant Manning's responsibilities included taking Roy and other such disabled students to the bathroom and that his duties included helping the students with their clothing, touching and cleaning them, *and disciplining them if they misbehaved or failed to listen.* It was during the carrying out of these duties and responsibilities by the teacher that the alleged misconduct occurred.

(Emphasis added). Therefore, appellant claims Manning's actions were arguably within the scope of employment.

Various statutory provisions are relevant here. Maryland Code (1978, 1997 Repl.Vol.), E.A. § 4–105 provides for county board immunity in certain situations. A "County board" includes "the Board of School Commissioners of Baltimore City." E.A. § 101(d).[4] At the relevant time, E.A. § 4–105(d) provided: "A county board shall have the immunity from

---

4. Effective June 1, 1997, the Legislature substituted "New Baltimore City Board of School Commissioners" for "Board of School Commissioners of Baltimore City," in E.A. § 1–101(d). 1997 Md. Laws, ch. 105.

liability described under § 5–353 of the Courts and Judicial Proceedings Article."

Maryland Code (1974, 1995 Repl.Vol.), § 5–353 of the Courts and Judicial Proceedings Article ("C.J.")[5] provided, in part:

(d) *Parties in tort claims; separate litigation of issues.*—(1) The county board shall be joined as a party to an action against a county board employee or volunteer that alleges damages resulting from a tortious act or omission committed by the employee **in the scope of employment** or by the volunteer within the scope of the volunteer's service or duties.

(2) The issue of whether the county board employee acted within the scope of employment may be litigated separately.

\*　　\*　　\*

(e) *Employees.*—A county board employee acting within the scope of employment, without malice and gross negligence, is not personally liable for damages resulting from a tortious act or omission for which a limitation of liability is provided for the county board under subsection (b) of this section, including damages that exceed the limitation on the county board's liability.

\*　　\*　　\*

(g) *Judgment levied against board.*—Except as provided in subsection (e) or (f) of this section, a judgment in tort for damages against a county board employee acting within the scope of employment or a volunteer acting within the scope of the volunteer's services or duties shall be levied against the county board only and may not be executed against the county board employee or the volunteer personally.

(Boldface added).

Appellant relies on C.J. § 5–353 to support his claim that the intentional character of Manning's conduct is not disposi-

---

5. Effective April 8, 1997, C.J. § 5–353 was transferred to C.J. § 5–518. 1997 Md. Laws, ch. 14. Maryland Code (1978, 1997 Repl.Vol.), E.A. § 4–105(d) refers to C.J. § 5–353. Maryland Code (1978, 1997 Repl. Vol., 1997 Supp.), E.A. § 4–105(d) refers to C.J. § 5–518.

tive of appellee's liability. He points out that C.J. § 5–353 did not provide that "if a teacher acts with malice or gross negligence that the school board is automatically immune and absolved of all liability." Rather, he observes that it provided that "the plaintiff may seek recovery from both the school board and the teacher."

Further, appellant contends that the language of the Local Government Tort Claims Act, codified in C.J. §§ 5–401 through 5–404,[6] supports his position that an intentional act does not necessarily foreclose appellee's liability.[7] C.J. § 5–403(b)(1) provided:

Except as provided in subsection (c)[8] of this section, a local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government.

Appellant also looks to C.J. § 5–402(b), which stated:

(b) *Immunity; exceptions.*-(1) Except as provided in paragraph (2) of this subsection, a person may not execute against an employee on a judgment rendered for tortious acts or omissions committed by the employee within the scope of employment with a local government.

(2)(i) An employee shall be fully liable for all damages awarded in an action in which it is found that the employee acted with actual malice.

(ii) In such circumstances the judgment may be executed against the employee and the local government may seek indemnification for any sums it is required to pay under § 5–403(b)(1) of this subtitle.

---

**6.** Effective April 8, 1997, C.J. §§ 5–401 through 5–404 were transferred to C.J. §§ 5–301 through 5–304. 1997 Md. Laws, ch. 14.

**7.** Interestingly, in his argument to the trial court, counsel for appellant advised the judge that the Local Government Tort Claims Act is "not applicable" to this case.

**8.** C.J. § 5–403(c) provided, *inter alia*, that a local government may not be liable for punitive damages.

Thus, appellant argues that "the [L]egislature considered factual scenarios under which a local government may be liable for the intentional acts, even acts committed with 'actual malice,' by one of its employees within the scope of employment." In those cases, however, local governments may seek indemnification from the employee. He posits that the Board's immunity under C.J. § 5–353 should be interpreted in the same way. "Contrary to the lower court ruling in this case," appellant maintains that "there should not be an automatic bar to suits against the board for vicarious liability when the alleged acts committed within the scope of their employment are intentional or malicious."

■■■ In this case, we need not resolve appellant's contention that the Board is not immune merely because of the intentional nature of Manning's conduct. This is because appellant concedes, as he must, that the Board cannot be liable unless Manning acted within the scope of employment. As we see it, Manning did not act within the scope of employment in beating Roy. We explain.

■■■ It is well settled that an employer may be held vicariously liable under the doctrine of *respondeat superior* for tortious acts committed by an employee, so long as those acts are within the scope of employment. *Oaks v. Connors*, 339 Md. 24, 30, 660 A.2d 423 (1995); *see Globe Indem. Co. v. Victill Corp.*, 208 Md. 573, 584, 119 A.2d 423 (1956). An employee's tortious conduct is considered within the scope of employment when the conduct is in furtherance of the business of the employer and is authorized by the employer. *Sawyer v. Humphries*, 322 Md. 247, 255, 587 A.2d 467 (1991); *see Ennis v. Crenca*, 322 Md. 285, 293, 587 A.2d 485 (1991). The Court explained in *Sawyer*:

"To be within the scope of the employment the conduct must be of the kind the servant is employed to perform and must occur during a period not unreasonably disconnected from the authorized period of employment in a locality not unreasonably distant from the authorized area, and actuated at least in part by a purpose to serve the master."

*Sawyer,* 322 Md. at 255, 587 A.2d 467 (quoting *East Coast Freight Lines, Inc. v. Mayor of Baltimore,* 190 Md. 256, 285, 58 A.2d 290 (1948) (other citations omitted)).

Even if the employee's acts were " ' "wilful, or reckless," ' " an employer may be liable for the wrongful acts of an employee, so long as the employee's acts were within the scope of employment and in furtherance of the employer's business. *Market Tavern, Inc. v. Bowen,* 92 Md.App. 622, 653, 610 A.2d 295, *cert. denied,* 328 Md. 238, 614 A.2d 84 (1992) (quoting *Cox v. Prince George's County,* 296 Md. 162, 170, 460 A.2d 1038 (1983), in turn quoting *Great Atl. & Pac. Tea Co. v. Roch,* 160 Md. 189, 192, 153 A. 22 (1931)); *see Wilson Amusement Co. v. Spangler,* 143 Md. 98, 104, 121 A. 851 (1923); *Cate v. Schaum,* 51 Md. 299, 308 (1879). As the Court said in *Cox,* "a master may be held liable for the intentional torts of his servant where the servant's actions are within the scope and in furtherance of the master's business and the harm complained of was foreseeable." *Cox,* 296 Md. at 171, 460 A.2d 1038; *see Market Tavern,* 92 Md.App. at 653–54, 610 A.2d 295; *see also Sawyer,* 322 Md. at 256, 587 A.2d 467; *LePore v. Gulf Oil Corp.,* 237 Md. 591, 597, 207 A.2d 451 (1965); *Central Railway Co. v. Peacock,* 69 Md. 257, 262, 14 A. 709 (1888). Accordingly, "an act may be within the scope of the employment, even though forbidden or done in a forbidden manner, or consciously criminal or tortious...." *Great Atl. & Pac. Tea Co. v. Noppenberger,* 171 Md. 378, 391, 189 A. 434 (1937) (citations omitted).

> Nonetheless, the *Sawyer* Court made clear that
>
> where an employee's actions are *personal,* or where they represent a departure from the purpose of furthering the employer's business, or where the employee is acting to protect his own interests, even if during normal duty hours and at an authorized locality, the employee's actions are outside the scope of his employment.

*Sawyer,* 322 Md. at 256–57, 587 A.2d 467 (emphasis added); *see Ennis,* 322 Md. at 294, 587 A.2d 485. In determining whether conduct is within the scope of employment, the Court

explained that when " 'the conduct of the servant is unprovoked, highly unusual, and quite outrageous,' courts tend to hold 'that this in itself is sufficient to indicate that the motive was a purely personal one' and the conduct outside the scope of employment." *Id.* at 257, 587 A.2d 467 (quoting *Prosser and Keeton on the Law of Torts* § 70, at 506 (5th ed.1984)).

 In order to be deemed within the scope of employment, an employee's tortious conduct need not be expressly authorized by an employer. An employee's unauthorized conduct might fall within the scope of employment if it was of the same general nature as conduct that was authorized or incidental to that conduct. *Sawyer*, 322 Md. at 256, 587 A.2d 467. The Court explained in *Ennis:*

" 'By "authorized" [it] is not meant authority expressly conferred, but whether the act was such as was incident to the performance of the duties entrusted to' " the employee by the employer.

*Ennis*, 322 Md. at 293–94, 587 A.2d 485 (quoting *Sawyer*, 322 Md. at 254–55, 587 A.2d 467, and cases cited therein).

The *Sawyer* Court enumerated a host of factors that apply to ascertain whether the conduct in issue was so similar or incidental to the conduct authorized as to be considered within the scope of employment. These include:

" '(a) whether or not the act is one commonly done by such servants; (b) the time, place and purpose of the act; (c) the previous relations between the master and the servant; (d) the extent to which the business of the master is apportioned between different servants; (e) whether the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant; (f) whether or not the master has reason to expect that such an act will be done; (g) the similarity in quality of the act done to the act authorized; (h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant; (i) the extent of departure from the normal method of accomplishing an authorized result[;] and (j) whether or not the act is seriously criminal.' *Id.,* 229."

*Sawyer,* 322 Md. at 256, 587 A.2d 467 (quoting *Noppenberger,* 171 Md. at 390–91, 189 A. 434 (quoting *Restatement of Agency* § 229 (1933))); *see Rusnack v. Giant Food, Inc.,* 26 Md.App. 250, 262–63, 337 A.2d 445 (1975); *Prosser and Keeton, supra,* § 70; *Restatement (Second) Agency* §§ 228, 229 (1958).

■ Ordinarily, the question of whether an employee's conduct is within the scope of employment is one for the jury. *Sawyer,* 322 Md. at 260–61, 587 A.2d 467; *see Drug Fair v. Smith,* 263 Md. 341, 346–47, 283 A.2d 392 (1971); *Dhanraj v. Potomac Elec. Power Co.,* 62 Md.App. 94, 101, 488 A.2d 512 (1985), *aff'd,* 305 Md. 623, 506 A.2d 224 (1986). The issue becomes a question of law, however, when there is no factual dispute. *Globe Indem. Co.,* 208 Md. at 585, 119 A.2d 423; *Karangelen v. Snyder,* 40 Md.App. 393, 396, 391 A.2d 474 (1978); *Rusnack,* 26 Md.App. at 265, 337 A.2d 445.

In analyzing the scope of employment issue in the educational context, *Hunter v. Board of Education of Montgomery County,* 292 Md. 481, 439 A.2d 582 (1982), is instructive. There, the Court observed that a school board "can only be held liable for the intentional torts of its employees committed while acting within the scope of their employment." *Id.* at 491 n. 8, 439 A.2d 582. In *dicta,* the Court also said:

> Where, as here, it is alleged that the individual educators have wilfully and maliciously acted to injure a student enrolled in a public school, *such actions can never be considered to have been done in furtherance of the beneficent purposes of the educational system.* Since such alleged intentional torts constitute an abandonment of employment, the Board is absolved of liability for these purported acts of its individual employees.

*Id.* (Emphasis added).

Appellant argues that the *dicta* in *Hunter* is not dispositive of the issue presented here. In observing that a school board could be liable for an employee's intentional torts committed within the scope of employment, he asserts that the *Hunter* Court contemplated that intentional torts could be "committed at least in part in the furtherance of the employer's business."

Therefore, according to appellant, the ultimate determination in this case is one for a jury.

In support of his position, appellant relies on cases from other jurisdictions that have considered the scope of employment issue in the context of a teacher's assaultive conduct on a student. For example, he cites to *McIntosh v. Becker*, 111 Mich.App. 692, 314 N.W.2d 728 (1981), in which the Court of Appeals of Michigan considered whether a school district could be held liable under the theory of *respondeat superior* for a teacher's verbal and physical assaults. The case arose from an incident involving the alleged choking and beating of a student by a teacher, and the alleged verbal assault upon the child, partly through the use of racial and sexual slurs.

The *McIntosh* court recognized that "a governmental unit may be liable under the doctrine of *respondeat superior* for an agent's intentional misconduct." *Id.* 314 N.W.2d at 731. It thus reversed summary judgment in favor of the school district with respect to the physical assault claim and the claims involving non-racial and non-sexual verbal assaults. Nevertheless, it affirmed the lower court's grant of summary judgment in favor of the school district with respect to the claim concerning the racial and sexual slurs, because it did

> not believe that any factual development can arise which could justify the finder of fact in concluding that the racial and sexual slurs alleged to have occurred here were within the apparent scope of [the teacher's] employment.

*Id.* 314 N.W.2d at 732.

Appellant also relies on *Randi F. v. High Ridge YMCA*, 170 Ill.App.3d 962, 120 Ill.Dec. 784, 524 N.E.2d 966 (1988). There, the Appellate Court of Illinois considered whether a day care center was vicariously liable for the alleged assault and sexual molestation of a three-year-old child by an employee of the day care center. The court concluded that the employee's conduct was "a deviation from the scope of the employment having no relation to the business of the day care center or the furtherance thereof," *id.* at 789, 524 N.E.2d at 971, and agreed with the lower court that, "as a matter of law, [the employee]

was not acting within the scope of her employment but solely for her own benefit when she assaulted and sexually molested plaintiffs' daughter." *Id.* at 787, 524 N.E.2d at 969.

Despite the refusal of the *Randi F.* court to hold the day care center vicariously liable, appellant refers us to the following language in the opinion:

[I]f an employee commits an intentional tort with the dual purpose of furthering the employer's interest and venting personal anger, *respondeat superior* may lie; however, if the employee acts purely in his own interest, liability under *respondeat superior* is inappropriate.

*Id.* at 788, 524 N.E.2d at 970. Appellant posits that this language establishes that "the jury as a fact finder may find that Defendant Manning was simply venting personal anger but that his actions were motivated in part for the furtherance of the Board's interest."

The above referenced cases do not persuade us to adopt appellant's position. In *McIntosh,* then existing Michigan law expressly permitted the teacher's use of reasonable force for discipline. In marked contrast, both Maryland law and the local rules expressly bar the use of corporal punishment. Further, the *McIntosh* court stated that the school district could be held liable, under the theory of *respondeat superior,* only "if the plaintiff's son reasonably could have viewed [the employee's] actions as within the scope of his apparent authority...." *McIntosh,* 314 N.W.2d at 732. In the case *sub judice,* we do not see how a nine-year-old child with Down's syndrome would view a physical assault by his special needs teacher, after that child had urinated in his pants, as being within the scope of the teacher's apparent authority. Moreover, the court in *Randi F.* rejected the vicarious liability claim, and thus that case is supportive of the Board's position.

Although we have not uncovered any Maryland cases dealing with the precise issues presented here, other jurisdictions that have considered the scope of employment issue with respect to acts of assault or sexual child abuse committed by a teacher upon a student provide guidance. *Boykin v. District*

*of Columbia,* 484 A.2d 560 (D.C.1984), is particularly illuminating.

In *Boykin,* the field coordinator of a program for deaf and blind children, who was employed by the District of Columbia, sexually assaulted a student. Thereafter, the employee resigned and entered a guilty plea to a charge of assault. The child's mother, as the legal representative of the child, then filed suit against the employee and, based on the doctrine of *respondeat superior,* against the District of Columbia. After the trial court granted the employer's motion for summary judgment, appellant appealed.[9] The *Boykin* court concluded that, as a matter of law, the employee's tortious conduct was not within the scope of his employment. *Id.* at 561. Acknowledging that scope of employment is ordinarily a question for the jury, the court nonetheless recognized that it "becomes a question of law for the court ... if there is not sufficient evidence from which a reasonable juror could conclude that the action was within the scope of the employment." *Id.* at 562.

As in this case, the appellant in *Boykin* argued that the assault was a direct outgrowth of the employee's job assignment, because that assignment contemplated physical contact with the child. She asserted that "a deaf, blind and mute child can be taught only through the sense of touch," and because "physical touching was necessarily a part of the teacher-student relationship," she claimed that it was "foreseeable that sexual assaults could occur. . . ." *Id.* Rejecting this argument, the *Boykin* court stated that it did "not believe that a sexual assault may be deemed a direct outgrowth of a school official's authorization to take a student by the hand or arm in guiding her past obstacles in the building." *Id.* It reasoned:

9. In *Boykin,* a default judgment was entered against the employee, subject to *ex parte* proof. At the time the trial court granted summary judgment as to the District of Columbia, however, it had not yet entered judgment against the employee. Accordingly, the court entered the certification that made the summary judgment final and appealable.

The sexual attack by [the employee] on [the student] was unprovoked. It certainly was not a direct outgrowth of [the employee's] instructions or job assignment, nor was it an integral part of the school's activities, interests or objectives. [The employee's] assault was in no degree committed to serve the school's interest, but rather appears to have been done solely for the accomplishment of [the employee's] independent, malicious, mischievous and selfish purpose.

*Id.*

The decision of the *Boykin* court is consistent with decisions from other jurisdictions that have refused to hold employers liable under the doctrine of *respondeat superior* for sexual assaults upon children perpetrated by school employees. *See, e.g., Smith v. American Express Travel Related Servs. Co.,* 179 Ariz. 131, 876 P.2d 1166, 1171 (App.1994) (holding that, as a matter of law, employer was not vicariously liable for sexual assault and harassment of employee, as acts were outside the scope of employment); *John R. v. Oakland Unified Sch. Dist.,* 48 Cal.3d 438, 256 Cal.Rptr. 766, 771, 769 P.2d 948, 953 (1989) (en banc) (holding that school district was not vicariously liable under doctrine of *respondeat superior* for sexual molestation of student by mathematics teacher); *State Farm Fire & Cas. Co. v. Century Indem. Co.,* 59 Cal.App.4th 648, 69 Cal.Rptr.2d 403, 408–09 (1997) (recognizing that school district was not potentially vicariously liable as teacher's sexual assault of student was not within scope of employment); *Kimberly M. v. Los Angeles Unified Sch. Dist.,* 215 Cal.App.3d 545, 263 Cal.Rptr. 612, 614 (1989) (concluding that school district was not liable under doctrine of *respondeat superior* for sexual assault of kindergarten student by teacher); *Jeffrey Scott E. v. Central Baptist Church,* 197 Cal.App.3d 718, 243 Cal.Rptr. 128, 132 (1988) (determining that church was not liable for Sunday school teacher's sexual abuse of minor); *Alma W. v. Oakland Unified Sch. Dist.,* 123 Cal.App.3d 133, 176 Cal.Rptr. 287, 293 (1981) (concluding that school district was not liable for rape of student by school custodian); *Willis v. Dade County Sch. Bd.,* 411 So.2d 245, 246 (Fla.Dist.Ct.App.1982) (determining that county school board was immune from suit

as physical education teacher's alleged assault and battery of student was not within scope of employment); *Bozarth v. Harper Creek Bd. of Educ.*, 94 Mich.App. 351, 288 N.W.2d 424, 426 (1979) (stating that "teacher's homosexual assaults on his student constitute conduct clearly outside the scope of the teacher's employment and outside the teacher's apparent authority"); *Medlin v. Bass*, 327 N.C. 587, 398 S.E.2d 460, 464 (1990) (holding that county school board was not vicariously liable for principal's sexual assault on student as such conduct was beyond the "scope of his employment as a matter of law"); *Bratton v. Calkins*, 73 Wash.App. 492, 870 P.2d 981, 986 (1994) (holding that sexual relationship between teacher and student was not within scope of the teacher's employment).

These cases compel the conclusion that Manning's conduct was not within the scope of his employment. As we see it, appellant has not generated a genuine dispute as to whether the assaultive conduct alleged here is of a type that is sanctioned by the Board. Indeed, Manning's conduct violated E.A. § 7–305(a), and it constituted a drastic departure from the Board's policy, as reflected in the local rules and the Supplement. Moreover, as a result of his conduct, Manning was convicted of assault. Even if the criminal conviction is not dispositive of the issue, it surely establishes the egregiousness of Manning's misconduct, and lends support to the Board's claim that his action was outside the scope of his employment.

We are thus unpersuaded by appellant's argument that Manning's conduct should be considered in furtherance of the Board's objectives, because it was arguably incidental to its objective of educating students. We recognize that there are legitimate occasions when a teacher may have to touch a student. These instances may include assisting in breaking up fights, preventing an accidental injury, protecting oneself, providing appropriate aid to disabled students, or employing passive restraint with a student who has emotional disabilities. Certainly, it is foreseeable that a teacher of a child with special needs may have to touch the student in order to assist the child in clothing himself, clean the child after the child eats, help the student in the bathroom, ensure that the child

does not physically injure himself, or attend to the child's health needs. That physical contact may be appropriate in certain situations, however, in no way constitutes implied authority for a teacher to beat a mentally disabled child as a means to discipline him. Indeed, as the Supplement indicates, "touching students is permitted" only for the purpose of "[m]aintaining a safe and orderly school environment, administering first aid, and attending to health needs...."

In sum, we fail to see how the act of physically striking a disabled child could be considered in furtherance of the Board's objective of educating disabled children, particularly when, as here, both State and local law forbid the use of corporal punishment for discipline purposes. Therefore, we conclude that no material factual dispute existed concerning whether Manning's conduct was within the scope of employment; Manning's conduct was neither expected, foreseeable, nor sanctioned. Rather, it was so extreme in nature, and so far beyond the bounds of appropriate behavior, that it cannot possibly be considered to have been in furtherance of appellee's objectives. Even when we view the facts and inferences in the light most favorable to appellant, as we must, we cannot say that the trial court erred in granting summary judgment.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLEE.**